536 F.2d 501
 Ronald BURGIN a/k/a Hasan Jamal Abdul Majid, Billy Sandpiper
a/k/a Abdul Wali, Plaintiffs-Appellants,
v.
Robert J. HENDERSON, Superintendent of Auburn Correctional
Facility, and Benjamin Ward, Commissioner of New
York State Department of Correctional
Services, Defendants-Appellees.
 No. 845, Docket 75-2144.
 United States Court of Appeals,
Second Circuit.
 Argued March 22, 1976.
Decided May 24, 1976.
 
 Michael B. Mushlin, New York City (The Legal Aid Society Prisoners' Rights Project, William E. Hellerstein, Joel Berger, New York City, on the brief), for plaintiffs-appellants.
 Joan P. Scannell, Deputy Asst. Atty. Gen., New York City (Louis J. Lefkowitz, Atty. Gen. of N. Y., Samuel A. Hirshowitz, First Asst. Atty. Gen., New York City, on the brief), for defendants-appellees.
 Before LUMBARD, FEINBERG and TIMBERS, Circuit Judges.
 FEINBERG, Circuit Judge:
 
 
 1
 Appellants, who state that they are Sunni (orthodox) Muslims, claim that they are denied the right to practice their religion at the Auburn Correctional Facility, where they are inmates. In March 1975, they brought an action in the United States District Court for the Northern District of New York seeking declaratory, injunctive and monetary relief against appellees Robert J. Henderson, Superintendent of the prison, and Benjamin Ward, Commissioner of the New York State Department of Correctional Services. Since plaintiffs sought in forma pauperis relief and assignment of counsel, the papers were forwarded to District Judge Edmund Port. Without requiring defendants to respond to the complaint, the judge dismissed it.[1] As will be seen below, such action was premature, and we remand for development of the record and further consideration of plaintiffs' claims.
 
 
 2
 Plaintiffs' complaint alleges that defendants have interfered with their free exercise of religion by preventing them from wearing beards or prayer caps or praying in the manner prescribed by their religion. Judge Port, in a brief memorandum, ruled that the prohibition of beards in prison has been held constitutional and that the Department of Correction has adopted comprehensive and reasonable rules to assure Muslim prisoners the right to practice their religion. On appeal, plaintiffs argue that without a factual hearing on the purported justification for the rules and the factual issues raised by the complaint, it was error to dismiss.
 
 
 3
 Whatever may have been the rule in the past, it is now common ground that a convicted defendant still has constitutional rights when the prison gate closes behind him. See, e. g., Wolff v. McDonnell, 418 U.S. 539, 555-56, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), and cases there cited; Procunier v. Martinez, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974); Sostre v. McGinnis, 442 F.2d 178 (2d Cir. 1971) (en banc), cert. denied, 404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed.2d 740; 405 U.S. 978, 92 S.Ct. 1190, 31 L.Ed.2d 254 (1972). And in the last decade or so, law suits by prisoners of various faiths have resulted in a number of decisions defining their rights. See, e. g., Cruz v. Beto, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972) (per curiam); Cooper v. Pate, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964) (per curiam); Mukmuk v. Commissioner of the Dep't of Correctional Servs., 529 F.2d 272 (2d Cir. 1976); Kahane v. Carlson, 527 F.2d 492 (2d Cir. 1975); LaReau v. MacDougall, 473 F.2d 974 (2d Cir. 1972), cert. denied, 414 U.S. 878, 94 S.Ct. 39, 38 L.Ed.2d 123 (1973); Pierce v. LaVallee, 293 F.2d 233 (2d Cir. 1961). Four years ago, this court held that limitations upon freedom of religion can be imposed only
 
 
 4
 if the state regulation has an important objective and the restraint of religious liberty is reasonably adapted to achieving that objective.
 
 
 5
 LaReau v. MacDougall, supra, 473 F.2d at 979; cf. Kahane v. Carlson, supra, 527 F.2d at 495 n. 6. Plaintiffs allege that they are members of the orthodox Sunni branch of the Islamic faith, a religion that is one of the "three major Western faiths." Wilson v. Beame, 380 F.Supp. 1232, 1239 (E.D.N.Y.1974). There is no assertion here there could not be in the absence of a response by defendant in the district court that plaintiffs' religious claim is made in bad faith,[2] or that their faith poses a real threat to prison security. Cf. Sostre v. McGinnis, 334 F.2d 906, 909 (2d Cir.), cert. denied, 379 U.S. 892, 85 S.Ct. 168, 13 L.Ed.2d 96 (1964). In short, the complaint raises serious issues, particularly when read with the solicitude properly accorded a pro se pleading.
 
 
 6
 Against this background, we turn to the particular claims here of religious discrimination. Although several cases have involved prisoners' beards,[3] there has been no binding precedent in this court and, so far as we know, no circuit court decision elsewhere in which a member of an established religion claimed a religious right to wear a beard.[4] In summarily concluding that the prohibition of beards was constitutional, Judge Port relied on decisions from other circuits[5] and on Sekou v. Henderson, No. 73-CV-543, a prior unreported opinion of his own that had been affirmed by us in open court. 495 F.2d 1367 (2 Cir. 1974). In the former group of cases, however, the claim of a right to wear a beard was based not upon religious beliefs but upon a right to determine one's own personal appearance.[6] Moreover, while our summary affirmance of Sekou v. Henderson undoubtedly suggested to the district judge that his earlier opinion was correct, our affirmance had no precedential value, as our local rule makes clear.[7]
 
 
 7
 Therefore, the question is an open one with us. On this record, the proper disposition of this appeal is indicated by Sostre v. Preiser,519 F.2d 763 (2d Cir. 1975), where we remanded a similar case for a factual hearing on the state's purported justification for a rule prohibiting beards. It may well be that the state's interest in hygiene and identification of inmates outweighs the prisoner's interest in growing a beard as required by his religion, but there is nothing in the record now to show that. As we pointed out in Sostre v. Preiser, supra, 519 F.2d at 764:
 
 
 8
 But even if the institutional purpose is legitimate and substantial, "that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved." Shelton v. Tucker, 364 U.S. 479, 488, 81 S.Ct. 247, 252, 5 L.Ed.2d 231 (1960). See also Procunier v. Martinez, 416 U.S. 396, 413, 94 S.Ct. 1800 (1811), 40 L.Ed.2d 224 (1974).
 
 
 9
 At the very least, a record must be made as to what the no-beard rule is; how it is applied; whether any beards are allowed; whether, as plaintiffs allege, there is no hygienic problem; and whether the need for identification requires total prohibition of beards, rather than some narrower limitation.[8]
 
 
 10
 What has been said substantially disposes of the rest of the case. As to prayer hats, plaintiffs claim a right of personal liberty, apparently buttressed by a religious claim. Moreover, they appear to allege that other inmates are allowed to wear head coverings. The claimed rights, of course, are not absolute, particularly in a prison setting, and plaintiffs' interest must be weighed against the state's concern that weapons can be concealed under a hat.[9] But if a factual record is necessary to decide whether the state's interest in hygiene and identification outweighs the prisoner's interest in growing a beard as required by his religion, the same treatment is required to determine whether a rule barring all hats of whatever size, style, or religious significance is necessary to prevent hiding weapons. See Abdullah v. Manson, Civil No. 15,606 (D.Conn. March 13, 1973) (holding after an evidentiary hearing that the state had not proven that security considerations justified a rule against head coverings in the face of free exercise claims by a Sunni Muslim).
 
 
 11
 Finally, defendants argue that present prison directives and schedules permit plaintiffs full freedom to perform their religious prayers. Defendants submit a variety of exhibits to buttress this point. None of these were before the district court, however, and they should be made part of the record. Moreover, since plaintiffs allege that they have been deprived of their rights despite the rules, there may be a factual dispute to resolve. On this issue, too, defendants may ultimately prevail, but we believe that the district court should consider the matter anew on the basis of a fuller record. Cf. LaReau v. MacDougall, supra; Bethea v. Daggett, 329 F.Supp. 796 (N.D.Ga.1970), aff'd, 444 F.2d 112 (5th Cir. 1971).
 
 
 12
 Remanded for further proceedings consistent with this opinion.
 
 
 
 [1]
 It has been suggested that it is generally better not to dismiss a pro se complaint before the defendant has responded. The rationale is that premature sua sponte dismissals are not only unfair to pro se plaintiffs, whose pleadings should be treated with solicitude, Haines v. Kerner, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); Frankos v. LaVallee, --- F.2d ----, ---- (2d Cir. 1976), but also can put cases on a time-consuming shuttle between the court of appeals and the district court, thus creating additional work for the courts which could be obviated by making a fuller record in the district court. See Robbins and Herman, Pro Se Litigation, Litigating Without Counsel: Faretta or For Worse, 42 Bkln.L.Rev. ----, at nn. 234-41 and accompanying text (1976)
 
 
 [2]
 Cf. Theriault v. Carlson, 495 F.2d 390 (5th Cir.), cert. denied, 419 U.S. 1003, 95 S.Ct. 323, 42 L.Ed.2d 279 (1974), on remand, sub nom. Theriault v. Silber, 391 F.Supp. 578 (W.D.Tex.1975); Remmers v. Brewer, 361 F.Supp. 537 (S.D.Iowa 1973), aff'd, 494 F.2d 1277 (8th Cir.), cert. denied, 419 U.S. 1012, 95 S.Ct. 332, 42 L.Ed.2d 286 (1974). See also notes 4 and 6 infra. Cf. also Maguire v. Wilkinson, 405 F.Supp. 637 (D.Conn.1975)
 
 
 [3]
 We put to one side the numerous cases which deal with regulation of personal appearance in non-prison contexts, where no religious liberty question is raised. See, e. g., Kelley v. Johnson, --- U.S. ----, 96 S.Ct. 1440, 47 L.Ed.2d 708, 44 U.S.L.W. 4469 (1976)
 
 
 [4]
 But see Brooks v. Wainwright, 428 F.2d 652 (5th Cir. 1970); Brown v. Wainwright, 419 F.2d 1376 (5th Cir. 1970), for somewhat idiosyncratic claims that beards had religious significance. See also note 2 supra
 
 
 [5]
 Rinehart v. Brewer, 491 F.2d 705 (8th Cir. 1974), aff'g per curiam 360 F.Supp. 105 (S.D.Iowa 1973); Blake v. Pryse, 444 F.2d 218 (8th Cir. 1971), aff'g per curiam 315 F.Supp. 625 (D.Minn.1970); Collins v. Haga, 373 F.Supp. 923 (W.D.Va.1974); Williams v. Batton, 342 F.Supp. 1110 (E.D.N.C.1972)
 
 
 [6]
 In Rinehart, supra note 5, a claim of religious significance was made in the district court, but not renewed in the court of appeals. In any event, the court had understandable doubts about the bona fides of the religious claim. 360 F.Supp. at 113-14. See notes 2 and 4 supra
 
 
 [7]
 Rules of the United States Court of Appeals for the Second Circuit, supplementing Federal Rules of Appellate Procedure, § 0.23. For the text and a discussion of this rule, see United States v. Joly, 493 F.2d 672, 675-76 (2d Cir. 1974)
 
 
 [8]
 In both court of appeals decisions cited by the court below, supra note 5, the district court had held a full evidentiary hearing. But cf. Brooks v. Wainwright and Brown v. Wainwright, both supra note 4. Appellate courts, including the Supreme Court, have frequently reversed lower court dismissals without an evidentiary hearing of claims by prisoners of denial of religious liberties. See, e. g., Cruz v. Beto, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972) (per curiam); Ross v. Blackledge, 477 F.2d 616 (4th Cir. 1973); United States ex rel. Jones v. Rundle, 453 F.2d 147 (3d Cir. 1971); Brown v. Peyton, 437 F.2d 1228 (4th Cir. 1971); Walker v. Blackwell, 360 F.2d 66 (5th Cir. 1966). See also Barnett v. Rodgers, 133 U.S.App.D.C. 296, 410 F.2d 995, 1003 (1969)
 
 
 [9]
 Brief for defendants-appellants, at 5. Of course, as the record now stands, this concern is expressed merely as an unsupported assertion by counsel of the reason for the rule