**Abdul Hakim Jamal Nasir SHABAZZ a/k/a Owen X. Denson, Plaintiff-Appellant,**

**v.**

**K. C. BARNAUSKAS, D. S. Gladis, C. W. Blivens, Davis H. Brierton, Defendants-Appellees.**

No. 79–2467.

United States Court of Appeals, Fifth Circuit.

June 21, 1979.

Abdul Hakim Jamal Nasir Shabazz, pro se.

Jim Smith, Atty. Gen., Tallahassee, Fla., for defendants-appellees.

Before AINSWORTH, GODBOLD and VANCE, Circuit Judges.

GODBOLD, Circuit Judge:

The motion of plaintiff for leave to appeal IFP is GRANTED and the Clerk shall docket the case.[1]

This case is one of two pro se cases filed by the appellant, a Florida state prisoner, under 42 U.S.C. § 1983, attacking the action of Florida state officers in requiring him to shave off his beard. He asserts in count one that this state action violated the First Amendment because his Islamic religious faith requires him to let his beard flow, and, in count two, that it violated the Eighth Amendment because he had been issued a permanent non-shaving permit and nevertheless was sentenced to punitive confinement and loss of gain time for refusal to shave. The district court, without hearing, dismissed count one on the basis of *Brooks v. Wainwright*, 428 F.2d 652 (CA5, 1970), and dismissed count two on the ground it was merely repetitions of a similar claim made by appellant in another pending case.

Two per curiam decisions of this court have concerned First Amendment attacks by Florida state prisoners against regulations requiring them to be clean shaven. In *Brown v. Wainwright*, 419 F.2d 1376 (CA5, 1970), the prisoner alleged that he was a demi-god, "an offspring of a God and Mortal," and that his mustache was a gift from his Creator; also he stated that he was himself an established religion. The district court denied relief without a hearing, and this court affirmed, stating that "for personal cleanliness and for personal identification under prison conditions, the rule appears to be neither unreasonable nor ar-

bitrary." We followed *Brown* in *Brooks v. Wainwright*, 428 F.2d 652 (CA5, 1970), where the prisoner asserted that his hair should be allowed to grow on his head and face because of a "divine revelation" made to him in which the "Lord God of Israel" commanded him to follow the divine laws "such as given Moses for the children of Israel," one of which was that he should neither "round the corners" of his head nor "mar the corners of [his] beard." His petition too was dismissed without a hearing and this court affirmed.[2]

The precise reasons for decision in *Brown* and *Brooks* are not apparent in the opinions. Both have been construed as involving "somewhat idiosyncratic claims that beards had religious significance," *Burgin v. Henderson*, 536 F.2d 501, n. 4 at 503 (CA2, 1976). Also they have been treated as alleging facially insubstantial claims of sincerely held religious beliefs. *Wright v. Raines*, 457 F.Supp. 1082, 1085 (D.Kan., 1978).

In 1975 the Eighth Circuit decided *Teterud v. Burns*, 522 F.2d 357 (CA8, 1975), holding that a regulation of the Iowa State Penitentiary prohibiting long hair violated the First and Fourteenth Amendment rights of an American Indian prisoner. The court in *Teterud* declined to follow *Brooks* and *Brown* because they had been decided on the basis of pleadings without a factual record. In *Teterud* a hearing was conducted, and the district court found that the wearing of long braided hair was a tenet of the Indian religion sincerely held by the prisoner, and that the interests of penal administration could be served by less restrictive means. On appeal the Eighth Circuit held that the religious basis of the practice was sufficiently established by the petitioner's showing that it was deeply rooted, and held that it was not the province of the court to determine religious orthodoxy. It affirmed the finding that Teterud's belief was sincere. It found that the prison's

---

1. It is appropriate to dispose of this case summarily. *See Groendyke Transport, Inc. v. Davis,* CA5, 1969, 406 F.2d 1159.

2. Later, in *Hill v. Estelle*, 537 F.2d 214 (CA5, 1976), we followed *Brooks*, but the plaintiff did not assert religious beliefs.

justifications for the prohibition were either without substance or overly broad and that, indeed, the only substantial reason advanced was an opinion, unsupported by empirical proof, that permitting long hair would create a "hassle" between correction officers and inmates, with no showing that this administrative burden was any greater than that normally encountered when the constitutional rights of prisoners are enforced.

In *Burgin v. Henderson*, 536 F.2d 501 (CA2, 1976), petitioners claimed to be Sunni (orthodox) Moslems. The Second Circuit distinguished between the right to wear a beard for personal appearance reasons and the right to wear a beard for religious reasons and remanded to the district court for factual development concerning both the good faith assertion of religious belief and the interest of the prison system in prohibiting beards. Subsequently, based upon *Burgin*, a district court has held that Sunni Moslems have a constitutional right to grow beards as an aspect of religious freedom and that no governmental interest sufficient to overcome this had been shown. *Monroe v. Bombard*, 422 F.Supp. 211 (S.D. N.Y., 1977). The District Court of Kansas has held a no-beard rule unconstitutional as applied to prisoners holding a sincere religious belief that requires them to grow beards. *Wright v. Raines*, 457 F.Supp. 1082 (D.Kan., 1978).[3]

Jurisprudence in this circuit since *Brown* and *Brooks* has shed additional light on the rights of prisoners to assert religious beliefs. In *Rudolph v. Locke*, 594 F.2d 1076 (CA5, 1979), we held that a prohibition on sending any material to inmates in segregation units may be unconstitutional as applied to political or religious materials, and we remanded to the district court for factfinding on the state's justification for application of the rule to political and religious materials. Earlier, in *Neal v. Georgia*, 469 F.2d 446, 450 (CA5, 1972), we held that the state could not curtail the First Amendment right of a prisoner to correspond with his spiritual advisor if no compelling state interest was present.

In our opinion *Brown* and *Brooks* have been correctly construed, as set out above, as involving religious claims so facially idiosyncratic that neither a hearing nor justification by the state for its rule was required. We hold that the court should not have dismissed plaintiff's First Amendment claim without a hearing inquiring into plaintiff's alleged sincerely held religious beliefs and into the state's justifications for its regulations.

The uncertain nature of the jurisprudence that requires hearing and consideration on a record that will assist the district court and this court if there is an appeal, is demonstrated by *Goulden v. Oliver*, 25 Cr.L. 4083 (6/6/79). Goulden, claiming to be an Orthodox Jew, attacked Alabama prison regulations that forced him to shave and cut his hair, which he alleged was contrary to his religious beliefs. The district court dismissed the complaint. By a single-judge order and without opinion this court denied Goulden's pro se application for leave to appeal in forma pauperis. Goulden applied for writ of certiorari, which the State opposed, relying upon *Brooks*. The Supreme Court denied the writ but Justices Blackmun and Brennan dissented, with opinion. The dissenting opinion states that the district court dismissed the complaint "reasoning that the prison regulations promoted cleanliness and personal identification and that those valid objectives outweighed any religious freedom petitioner was entitled to enjoy under the Constitution." 25 Cr.L. at 4083. Whether the dismissal was after hearing or based upon matter extrinsic to the complaint, or on the complaint alone, we do not know. The denial of the petition for certiorari carries no precedential value nor does a single judge's unexplained denial of leave to appeal in forma pauperis. We set out in the margin the opinion of Justices Blackmun and Brennan (except the history of the case).[4] It demonstrates more vividly

---

3. This case notes a number of other cases involving prison regulations against uncut hair.

4. In *Cruz v. Beto*, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972), this Court held

than anything we can say the need for full-blown and careful judicial consideration of the issue presented to us.

Also, we think that petitioner's Eighth Amendment claim, that he had been issued a permanent non-shaving permit and nevertheless was sentenced to punitive confinement and loss of time for refusal to shave, has sufficient arguable merit that it should not have been dismissed without requiring responsive pleadings and a hearing if necessary.

The dismissal is VACATED and the cause REMANDED for further proceedings. It should be consolidated with petitioner's other case pending in the district court (No. 79–38).

VACATED AND REMANDED.

that a complaint that challenged restrictions on an inmate's practice of Buddhism stated a claim upon which relief could be granted. Ruling that "reasonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendments without fear of penalty," id., at 322 n. 2, 92 S.Ct. 1079, the Court remanded the case for a hearing on the merits. See also Cooper v. Pate, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964).

Whatever validity the Fifth Circuit's Brooks rule may once have had, it has been severely undercut by Cruz and the subsequent cases that have reaffirmed the principle that prison regulations are subject to constitutional scrutiny. See Jones v. North Carolina Prisoner's Union, 433 U.S. 119, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977); Bounds v. Smith, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); Procunier v. Martinez, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974). Citing Cruz and Martinez, the Second Circuit has rejected Brooks and held that a prisoner challenging prison grooming regulations on free exercise grounds is entitled to a hearing on the reasonableness of the prison's regulations. Burgin v. Henderson, 536 F.2d 501, 504, and n. 8 (CA2 1976). Accord: Jihaad v. Carlson, 410 F.Supp. 1132, 1134 (ED Mich.1976); Wright v. Raines, 1 Kan.App.2d 494, 500–501, 571 P.2d 26, 31–32

(1977), cert. denied, 435 U.S. 933, 98 S.Ct. 1508, 55 L.Ed.2d 530 (1978). Similarly, the Eighth Circuit has rejected the contention that such regulations are valid as a matter of law, and has affirmed a decision finding violative of the Free Exercise Clause an Iowa rule that prevented an American Indian prisoner from wearing long braided hair. Teterud v. Burns, 522 F.2d 357, 362 (CA8 1975) (rejecting language in Proffitt v. Ciccone, 506 F.2d 1020 (CA8 1974)). Other courts have upheld similar free exercise claims. See Wright v. Raines, 457 F.Supp. 1082 (Kan. 1978); Moskowitz v. Wilkinson, 432 F.Supp. 947 (Conn.1977) (Orthodox Jew); Monroe v. Bombard, 422 F.Supp. 211, 217–218 (SDNY 1976); Maguire v. Wilkinson, 405 F.Supp. 637 (Conn.1975).

While a decision based on evidentiary proof may well result in a finding that petitioner's religious beliefs are not sincere,[2] or that the State's interests are sufficient to justify the restriction imposed on petitioner's professed religious practice, I am not yet prepared to say that there is no set of facts that would entitle him to relief. I would permit petitioner to proceed in forma pauperis, grant the petition, vacate the order of the Court of Appeals, and remand the case with instructions to allow petitioner an adjudication on the merits of his complaint.