Lawrence H. KENT, Plaintiff-Appellant,

v.

Perry JOHNSON and Dale Foltz, Defendants-Appellees.

No. 84–1578.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 13, 1986.

Decided May 18, 1987.

On Reconsideration June 22, 1987.

Rehearing and Rehearing En Banc Denied Aug. 7, 1987.

Daniel G. Zeiser, argued, Cleveland, Ohio, for plaintiff-appellant.

Frank J. Kelley, Atty. Gen. of Michigan, Lansing, Mich., Elaine Dierwa Eischhoff, argued, Asst. Atty. Gen., Detroit, Mich., for defendants-appellees.

Before ENGEL, JONES and KRUPANSKY, Circuit Judges.

NATHANIEL R. JONES, Circuit Judge.

Plaintiff appeals the district court's dismissal of his suit brought under 42 U.S.C. § 1983 (1982) for allegedly unconstitutional prison conditions in violation of the first, fourth, eighth and fourteenth amendments. For the reasons set forth below, the judgment of the district court is reversed and the case is remanded for further proceedings.

Plaintiff-appellant is incarcerated at the State Prison for Southern Michigan ("prison"). In his *pro se* complaint, he alleged that the defendants-appellees' policy and practice of according female prison guards full and unrestricted access to all areas of the housing unit at the prison allows the female guards to view him performing necessary bodily functions in his cell and to view his naked body in the shower area. He further alleged that he finds this policy and practice humiliating and degrading and that it violates several of his constitutional rights: his first amendment right to practice his religious beliefs (i.e., to observe the "fundamental Christian tenet of modesty"), his limited fourth amendment right to privacy, and his eighth amendment right to be free from cruel and unusual punishment. Plaintiff also argues on appeal that the district court's judgment was a violation of procedural due process.

The pertinent facts as alleged in the complaint are as follows. Plaintiff's cell is walled on both sides with open bars front and rear allowing unrestricted view. He is not allowed to hang anything on these

bars, even temporarily, to perform toilet functions in privacy. He further alleges that the shower facilities at the prison are open to the view of all guards, male and female alike. These shower facilities are not equipped with "modesty panels" to offer the male inmates even limited privacy. The female guards assigned to the housing unit have unrestricted access to all areas of the unit. They are permitted, and in fact, required, to make random and unannounced visual inspection (rounds) of all areas of the housing unit, including the shower area and the individual cells.

Plaintiff alleged that he has filed a grievance over this practice and has requested the supervisory authorities to keep the female guards out of the shower area while he is showering. Reading the complaint liberally, he alleged that his grievances and requests have resulted in retaliatory surveillance of his shower activities by female guards for purposes of harrassment and humiliation.

Defendants do not dispute that it is the practice of the Michigan Department of Corrections to allow female guards complete and unrestricted access to all areas of the housing unit at the prison. Rather, they claim that they are required to follow such a nondiscriminatory practice pursuant to the final order of United States District Judge Cook in *Griffin v. Michigan Dept. of Corrections,* 654 F.Supp. 690 (E.D.Mich. 1982).

Plaintiff's complaint was filed with the district court on March 21, 1984. On April 30, defendants filed their motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). The matter was referred to a United States Magistrate for Report and Recommendation (R & R) pursuant to 28 U.S.C. § 636(b)(1)(B) (1982). The magistrate's R & R, recommending that defendants' motion be granted, was issued on June 29, 1984. Plaintiff alleges that he did not actually receive the R & R at the prison until July 10. Counsel for the defendants conceded at oral argument that the R & R was not received at the Michigan Attorney General's office until July 7. Plaintiff mailed his objection to the R & R on July 11; it

was filed with the district court on July 13. In the interim, however, the district judge adopted the R & R and granted the defendants' motion to dismiss on July 10, without the benefit of considering plaintiff's objection. On July 26, 1984, plaintiff filed a motion for relief from judgment pursuant to Fed.R.Civ.P. 60(b)(1). In order to preserve his right to appeal, he filed a notice of appeal on August 7, 1984. The district court never ruled on the Rule 60(b)(1) motion.

### I.

The threshold issue presented to this court is whether plaintiff waived his right to appeal the district court's judgment by failing to file timely objections to the magistrate's R & R. Section 636(b)(1) gives both parties ten days after "being served with a copy" of the R & R to "serve and file written objections" thereto. Assuming the clerk of the district court mailed the R & R to plaintiff on the date it was filed, three provisions of the federal rules of civil procedure come into play. First, three days are added to the ten day period to cover the time for mailing. Fed.R.Civ.P. 6(e). Second, service is complete upon mailing. *Id.* 5(b). Finally, under Rule 6(a), as it read prior to its most recent amendment in August 1985, computations of time periods exceeding seven days do not exclude intervening weekends or holidays. In other words, plaintiff had thirteen calendar days from June 29, 1984, to "serve and file" written objections to the R & R.

This circuit has held that failure to object timely to a magistrate's R & R where the party is properly notified of the time limit constitutes waiver of that party's right to appeal from the district court's entry of judgment in accord with the R & R. *United States v. Walters,* 638 F.2d 947, 949–50 (6th Cir.1981). The *Walters* rule was recently upheld in *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). It is a procedural rule made pursuant to the court's supervisory powers. It plainly is not a jurisdictional rule; the court of appeals retains subject matter jurisdiction over the appeal regardless of the untimely

filing or nonfiling of objections. *Id.* at 470. In *Patterson v. Mintzes*, 717 F.2d 284, 286 (6th Cir.1983), this court concluded

> that when written objections to a magistrate's report are tendered beyond the 10 day period of 28 U.S.C. § 636(b)(1), but are nevertheless filed and considered by the district court, the criteria identified in *Walters* in justification of the waiver rule promulgated therein dissipate and the rule will not apply to bar appellate review.

Likewise, the Supreme Court in *Thomas v. Arn* "emphasize[d] that, because the [*Walters*] rule is a nonjurisdictional waiver provision, the Court of Appeals may excuse the default *in the interest of justice*." 106 S.Ct. at 475 (emphasis added). In a footnote to this last quote, the Court invited the reader to compare the provisions of Fed.R.Crim.P. 52(b), thereby suggesting that the interests of justice might be served by excusing the waiver of right to appeal where the judgment of the district court constitutes "plain error." 106 S.Ct. at 475 n. 15.

In the case at bar, the magistrate's R & R was filed and mailed to plaintiff on June 29, 1984. Properly computed, plaintiff had thirteen calendar days—or until July 12—to file his objections with the district court. Of course, plaintiff states in his affidavit that he did not receive the R & R until July 10, the day that the district court entered judgment. His objection was sent out the following day and filed with the court on July 13—one day late. However, even if it had been timely filed on July 12 (the thirteenth calendar day), it would not have mattered because the district court entered judgment prematurely (i.e., before the expiration of the ten statutory days plus the three days for mailing under Rule 6(e)).

■ Under the particular circumstances of this case, we opt to exercise the court's jurisdiction and entertain the appeal. There are a number of factors that, considered in conjunction, justify this deviation from the *Walters* procedural rule. Initially, plaintiff's unrebutted affidavit establishes that he did not actually receive the magistrate's R & R until the eleventh day.

Counsel for the defendants also received the R & R well after the date of filing. While, under the federal rules, receipt is presumed three days after mailing, the unrefuted allegation of delayed receipt should be considered in weighing the "interests of justice." We wish to stress, however, that we do not recognize the mere allegation of delayed receipt as a formal exception to *Walters* for fear that the exception will swallow the rule. The interests of justice must be weighed on a case by case basis. Secondly, the district court's judgment was entered prematurely. This practice is not to be condoned. Thirdly, the objection was, in fact, filed only one day late. Under the circumstances, defendants-appellees do not take a position on the waiver issue but leave it to the discretion of the court. Finally, this case presents questions of considerable import concerning the conflict between the constitutional rights of prisoners and the Title VII rights of prison guards of the opposite sex. For the foregoing reasons, and in the interests of justice, this court will exercise its jurisdiction over the instant appeal without creating any specific exception to the *Walters* rule.

## II.

■ The second aspect of this appeal deals with the merits of the district court's dismissal of the *pro se* complaint for failure to state a claim upon which relief can be granted. In reviewing the dismissal of a complaint under Fed.R.Civ.P. 12(b)(6), this court must construe the complaint liberally in plaintiff's favor and accept as true all factual allegations and permissible inferences therein. *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir.1976). Dismissals of complaints filed under the civil rights statutes are scrutinized with special care, *Brooks v. Seiter*, 779 F.2d 1177, 1180 (6th Cir.1985), and *pro se* complaints are held to even "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972). In the final analysis, a Rule 12(b)(6) motion should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts

in support of his claim that would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

The instant complaint sets forth three constitutional bases for the section 1983 action. Plaintiff claimed that the prison authorities' practice of allowing female prison guards unrestricted access to the male housing unit at the prison violated plaintiff's rights under the first, fourth and eighth amendments, as incorporated by the fourteenth amendment. Although these three claims are discussed in more detail below, it is first necessary to explore the legal basis for the magistrate's R & R and the district court's judgment of dismissal.

The R & R, as adopted by the district court, rejected plaintiff's three constitutional claims as being inconsistent with the final opinion of Judge Cook in *Griffin v. Michigan Dept. of Corrections,* 654 F.Supp. 690 (E.D.Mich.1982). *Griffin* was a class action brought on behalf of female prison guards against the Michigan Department of Corrections, claiming that the Department's refusal to allow female guards to patrol the housing units of several male prisons violated Title VII. Judge Cook ruled in favor of the plaintiff class. At one point in his lengthy opinion, Judge Cook touched upon the general concern at issue in the instant case:

> In the case at bar, any contention by Defendants that they are entitled to the Title VII BFOQ [bona fide occupational qualification] exception on the basis of the inmates' right to privacy argument is without merit. Inmates do not possess any protected right under the Constitution against being viewed while naked by correctional officers of the opposite sex. The entire basis of the argument rests on assumptions and stereotypical sexual characteristics which have been expressly prohibited by Title VII, *Dothard* [*v. Rawlinson,* 433 U.S. 321, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977)], and other Supreme Court decisions that refute principals [*sic*] of sexual stereotyping.

*Griffin,* 654 F.Supp. 690 (*quoted in* magistrate's R & R at 2). As the discussion

below suggests, we have some doubt as to the accuracy of this broad-based characterization of the state of the law. Commendably, Judge Cook did somewhat soften this absolutist position in his March 22, 1984, Implementation Order # 1, *reproduced at* App. 47–53. Paragraph 11 of Implementation Order # 1 stated:

> Plaintiffs classified as Resident Unit Officer IV on a permanent or temporary basis shall perform all of the duties and responsibilities of the classification ... except that a male officer may be assigned shower supervision duty and/or any necessary strip searches of male prisoners when operationally convenient.

App. 52–53 (*quoted in* magistrate's R & R at 3).

**A.**

■ In his complaint, plaintiff asserted that one of the fundamental tenets of his Christianity is "modesty." He claimed that he was deprived of rights under the free exercise clause of the first amendment because he could not practice "modesty" when women guards were permitted and required to observe him performing necessary bodily functions in his cell and while showering. In addressing specifically plaintiff's free exercise claim, the magistrate stated: "Considering that Plaintiff's First Amendment claim is based only upon general values of Christian modesty, the undersigned can find no basis for rejecting the *Griffin* decision and, accordingly, recommends that Defendants' Motion to Dismiss be granted."

Without ourselves speculating on the merits of plaintiff's free exercise claim, it is obvious that the magistrate's analysis, as adopted by the district court, was flawed in many respects. Primarily, he impermissibly discounted the nature of plaintiff's asserted first amendment right. The inquiry should have been as follows. First, a determination must be made: (1) whether the belief or practice asserted is religious in the person's own scheme of things, and (2) whether it is sincerely held. *See Hill v. Blackwell,* 774 F.2d 338, 342 (8th Cir.1985) (in context of prisoner's section 1983 claim).

*See also Redmond v. GAF Corp.*, 574 F.2d 897, 901 n. 12 (7th Cir.1978) (citing *Welsh v. United States*, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970); *United States v. Seeger*, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1969)) (considered within context of Title VII). Secondly, it must be determined whether the challenged practice of the prison officials infringes on the religious belief. *Hill*, 774 F.2d at 342–43. Both of these inquiries are factual in nature. In assessing the sufficiency of plaintiff's complaint for purposes of defendants' Rule 12(b)(6) motion, the magistrate and district court should have assumed the truth of the factual allegations and therefore assumed that plaintiff had a sincerely held religious belief that was infringed by the defendants' practices. In our opinion, plaintiff's religious claim is not so "facially idiosyncratic" as to justify dismissal on the pleadings. *See Shabazz v. Barnauskas*, 598 F.2d 345, 347 (5th Cir.1979).

The next step in the proper analysis is to inquire whether the challenged practice of the prison officials furthers some legitimate penological objective. *Hill*, 774 F.2d at 343; *Dreibelbis v. Marks*, 742 F.2d 792 (3d Cir.1984). Of course, the determination of state prison authorities as to what are legitimate penological objectives and what regulations and practices further them is entitled to great deference. *Block v. Rutherford*, 468 U.S. 576, 104 S.Ct. 3227, 3232, 82 L.Ed.2d 438 (1984); *Hill*, 774 F.2d at 343.

Clearly, the magistrate and the district court did not apply this line of analysis to the factual allegations of plaintiff's complaint. Rather, they erroneously discredited the assertion of a religious belief *and* considered plaintiff's claim inconsistent with and therefore precluded by the final opinion and order in *Griffin*. Herein lies the second major flaw with the opinion below. *Griffin* is not completely and necessarily incompatible with plaintiff's claim for relief.

The *Griffin* case recognized the employment rights of female prison guards and, in the process, redefined the statutory obligations of prison administrators. The operational necessity of nondiscrimination in employment applies as fully to women guards as it does, for example, to Black or Jewish guards. To the extent that it is an operational or administrative necessity, nondiscrimination is also, by definition, a legitimate penological objective.

Plaintiff challenges the implementation of the *Griffin* nondiscrimination order on the grounds that it infringes his first amendment right to the free exercise of his religious belief. An inmate's religious freedom must be respected unless it is "inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974); *accord Brown v. Johnson*, 743 F.2d 408, 411–12 (6th Cir. 1984), *cert. denied*, 469 U.S. 1215, 105 S.Ct. 1190, 84 L.Ed.2d 336 (1985); *Patterson v. Mintzes*, 717 F.2d 284, 289 (6th Cir.1983). Assuming plaintiff's first amendment claim has merit, an assumption that must be made under these circumstances, the question becomes whether a reasonable accommodation of plaintiff's need for "modesty" can be reached without running afoul of the authorities' legitimate nondiscrimination objective. Common sense, as well as Judge Cook's Implementation Order # 1, ¶ 11, *supra*, suggests that it can. In any event, it is defendants' burden to establish affirmatively that accommodation of sincerely held religious beliefs is administratively impracticable.

It may be that aspects of the *Griffin* order restrict the ability of the prison officials to be sensitive to plaintiff's constitutional rights without compromising legitimate penological objectives. For instance, it may be shown that modesty screens in the shower or in front of toilets in the cells are inconsistent with prison security. It may likewise be shown that it is administratively impractical to assign male guards to shower duty or to permit this particular plaintiff to shower under the supervision of a male guard. However, this is pure factual speculation. Such determinations are not to be made in deciding a Rule 12(b)(6) motion.

It is conceivable that plaintiff could prove a set of facts establishing that he has a legitimate first amendment interest *and* that interest can be protected without impinging legitimate penological objectives such as the operational necessity of nondiscrimination in employment. To that extent, the district court's judgment dismissing plaintiff's first amendment claim was in error.

### B.

■ Plaintiff's right to privacy claim is characterized as deriving from the fourth amendment, as incorporated by the fourteenth amendment. Literally, the issue is the reasonableness of the surveillance by female prison guards of plaintiff's person in various states of undress. Couched in fourth amendment terms, the inquiry becomes whether plaintiff has a reasonable expectation of privacy from such "searches." *Cf. Hudson v. Palmer,* 468 U.S. 567, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984) (prisoners have no reasonable expectation of privacy protecting their cells from unreasonable searches); *Bell v. Wolfish,* 441 U.S. 520, 558, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979) (under appropriate circumstances, body cavity searches of pretrial detainees are not unreasonable). Neither the Supreme Court nor the Sixth Circuit has ever expressly recognized that the fourth amendment "right to privacy" encompasses the right to shield one's naked body from view by members of the opposite sex. Two of the three circuits that have considered and/or recognized such a right have done so without detailing its constitutional origins. Perhaps it is merely an abundance of common experience that leads inexorably to the conclusion that there must be a fundamental constitutional right to be free from forced exposure of one's person to strangers of the opposite sex when not reasonably necessary for some legitimate, overriding reason, for the obverse would be repugnant to notions of human decency and personal integrity. Of course, as with all observations of law that are grounded on some "universal" or "moral" truth, this premise is subject to debate by reasonable minds. *See, e.g., Dothard v.*

*Rawlinson,* 433 U.S. 321, 346 n. 5, 97 S.Ct. 2720, 2735 n. 5, 53 L.Ed.2d 786 (1977) (Marshall, J., concurring in part).

In *Lee v. Downs,* 641 F.2d 1117 (4th Cir.1981), the court affirmed a jury verdict for plaintiff, a female prison inmate, for the forced removal of her undergarments in the presence of male guards. The court acknowledged that confinement in a prison setting necessarily results in the surrender of many constitutional rights, especially rights to privacy.

> Most people, however, have a special sense of privacy in their genitals, and involuntary exposure of them in the presence of people of the other sex may be especially demeaning and humiliating. When not *reasonably necessary,* that sort of degradation is not to be visited upon those confined in our prisons.

*Id.* at 1119 (emphasis added).

In a more recent case, *Grummett v. Rushen,* 779 F.2d 491 (9th Cir.1985), the Ninth Circuit upheld a policy of the prison authorities at San Quentin allowing female guards to patrol areas of the prison that provide an occasional, restricted view of the toilets in the individual cells and distant views of the shower areas. The court acknowledged that inmates had limited privacy rights under the fourth and fourteenth amendments. *Id.* at 493 n. 1. It concluded, however, "that the facts of this case establish that the prison authorities have devised the *least intrusive means* to serve the state's interest in prison security." *Id.* at 494 (emphasis added). In support of this conclusion, the court stated:

> Female guards are not assigned to positions requiring unrestricted and frequent surveillance. Rather, the positions to which they are assigned require infrequent and casual observation, or observation at a distance. Female guards working the tiers walk past cells routinely, but do not stop for prolonged inspection.... Female guards do not accompany male inmates to the individual or gang showers, and are not stationed on the tiers where the showers are located. Females are assigned to the more distant gunrail positions overlooking the show-

ers, where, again, the surveillance is obscured. Under these circumstances, the inmates have not demonstrated that these restricted observations by members of the opposite sex are so degrading as to require intervention by this court. *Id.* at 494–95. *See also Smith v. Chrans,* 629 F.Supp. 606, 610–11 (C.D.Ill.1986).

Finally, in *Gunther v. Iowa State Men's Reformatory,* 612 F.2d 1079 (8th Cir.), *cert. denied,* 446 U.S. 966, 100 S.Ct. 2942, 64 L.Ed.2d 825 (1980), the Eighth Circuit reviewed the prison administration's claim that a Title VII BFOQ eliminated women from the position of prison guard in the men's prison. The court implicitly recognized that the privacy interests of inmates must be accommodated when integrating female guards into male prisons when it held that the claim of a BFOQ required showings that the hiring of female guards "would undermine the essence of the prison administration," and that it was not reasonably possible to "rearrange job responsibilities in a way to minimize the clash between privacy interests of the inmates, and the nondiscrimination principle of Title VII." *Id.* at 1086.

This type of reasonable accommodation is exactly what paragraph 11 of *Griffin's* Implementation Order #1 encouraged. The fact remains, however, that defendants offered no evidence in support of their dispositive motion below, and do not argue now, that they have taken any measures whatsoever to accommodate the competing interests of the male inmates and the female guards. They appear to have gone from one extreme of denying females equal employment opportunity to the opposite extreme of running roughshod over the privacy interests and personal dignity of male prisoners.

Thus, assuming that there is some vestige of the right to privacy retained by state prisoners and that this right protects them from being forced unnecessarily to expose their bodies to guards of the opposite sex, the instant complaint did state a constitutional claim upon which relief can be granted.

## C.

Plaintiff also made a claim that the practices of the defendants constituted cruel and unusual punishment prohibited by the eighth amendment. The standard for whether a particular practice or condition constitutes cruel and unusual punishment was discussed in *Rhodes v. Chapman,* 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). There, the Supreme Court stated that these words are to be interpreted "'in a flexible and dynamic manner.'" The amendment "'must draw its meaning from the evolving standards of decency that mark the progress of a maturing society.'" *Id.* at 345–46, 101 S.Ct. at 2398 (citations omitted). In that case, the Court noted that it had "extended the Amendment's reach beyond the barbarous physical punishments at issue in the Court's earliest cases." *Id.* at 345, 101 S.Ct. at 2398.

Today the Eighth Amendment prohibits punishments which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain," or are grossly disproportionate to the severity of the crime. Among "unnecessary and wanton" inflictions of pain are those that are "totally without penological justification."

*Id.* at 346, 101 S.Ct. at 2399 (citations omitted).

Defendants downplay the nature of the "embarrassment" that individual inmates such as the instant plaintiff might feel upon being forced to stand naked before the watchful eyes of female guards. They conclude flatly that "it is not a condition of Plaintiff's confinement which can be characterized as barbarous or shocking to the conscience or heinous or an unnecessary and wanton infliction of pain." Brief for Appellee at 12. While it is true that no federal court has yet held that such conditions violate the eighth and fourteenth amendments, we do not think it impossible for this plaintiff to make such a showing in this particular case.

Construing plaintiff's complaint liberally, he alleges that female prison guards have allowed themselves unrestricted views of his naked body in the shower, at close

range and for extended periods of time, to retaliate against, punish and harass him for asserting his right to privacy. These allegations are completely distinguishable from the facts of *Smith v. Chrans,* 629 F.Supp. at 611, where sightings by female guards were "occasional and almost inadvertent," and the prison policy was to hold intrusions on the personal functions of male inmates by female guards to a minimum. The district court in that case specifically found that: "Nothing in the evidence indicates malicious motivations for the sightings, the deliberate harassment of the plaintiffs by the defendant, or the deliberate and intentional infliction of humiliation or degradation." *Id.* Rather, plaintiff's allegations in the instant case are similar to those extraordinary instances warranting constitutional protection set forth by the court in the California state case relied upon by the court in *Griffin,* 654 F.Supp. 690 (quoting *In re Montgomery,* Nos. HC446, HC597, slip op. at 9 (San Luis Obispo Cty.Super.Ct. Sept. 18, 1978)). Under these circumstances, we rule that the district court erred in dismissing plaintiff's eighth amendment claim under Rule 12(b)(6).

### III.

Plaintiff's final claim is that he was denied due process by the district court's reliance upon *Griffin* in granting defendant's motion. It is plaintiff's contention that the district court's reliance upon *Griffin* constituted res judicata or offensive collateral estoppel, and that such reliance was inappropriate because plaintiff was not a party to *Griffin.* This claim is obviously without merit. The district court merely, albeit erroneously, applied the principle of stare decisis.

### IV.

Accordingly, the judgment of the district court is REVERSED and the case is REMANDED for further proceedings consistent with this opinion. Due to the unfortunate passing of Judge Thorton, this case will undoubtedly have to be reassigned to another judge in the Eastern District of Michigan. We note its substantive relationship to *Griffin,* decided by Judge Cook. *See* E.D.Mich.R. 8(a) and (b).

KRUPANSKY, Circuit Judge, concurring in part and dissenting in part.

Because Kent's sworn affidavit stating that he did not receive his copy of the Magistrate's Report and Recommendation until July 10, 1984 has effectively rebutted the three day presumption imposed by Fed. R.Civ.P. 6(e), I agree that this court should accept jurisdiction over his appeal. I would also reverse the district court's dismissal of Kent's First Amendment freedom of religion claim for the reasons articulated in part IIA of the majority opinion.

The majority concedes that its Fourth and Eighth Amendment resolutions have not been recognized or approved in any decision emanating from either the Supreme Court or this circuit. *See,* Slip op. at 1226, 1227. Because the majority advocates an unwarranted extension of liability under § 1983 which is inconsistent with the logic and reasoning of relevant Supreme Court precedent interpreting the Fourth and Eighth Amendments, I respectfully dissent from parts IIB and IIC of the majority opinion.

Kent has alleged that his Fourth Amendment rights have been infringed by an unreasonable search as a result of an invasion of his privacy by female prison guards who, while performing their routine duties, were capable of viewing him in his prison cell and the prison shower while in various stages of nudity. Kent argued that he had a reasonable expectation of privacy in not being exposed in the nude to members of the opposite sex while he was locked in his prison cell and while he was bathing in the supervised prison shower area.

In *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), a prisoner asserted that he had a reasonable expectation of privacy which prevented prison officials from conducting a "shakedown" search of personal effects contained in his personal locker situated in his prison cell to determine if he possessed any items of contraband. In unequivocal language, the

Supreme Court stated that prisoners do not retain a reasonable expectation of privacy in their prison cells:

> Notwithstanding our caution in approaching claims that the Fourth Amendment is inapplicable in a given context, we hold that society is not prepared to recognize as legitimate *any subjective expectation of privacy that a prisoner might have in his prison cell* and that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell. The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions.

104 S.Ct. at 3200 (emphasis added). A prisoner who does not possess a reasonable expectation of privacy under the facts of *Hudson* cannot be heard to argue that his expectation of privacy is infringed by corrections officers while conducting routine visual security surveillance of prisoners within their prison cells and the prison's supervised shower area. Because the *Hudson* Court clearly and without equivocation stated that prisoners do not have *any* reasonable expectation of privacy in their prison cells and that the Fourth Amendment proscription against unreasonable seizure does not apply within the prison cell, Kent has failed to demonstrate that his complaint of visual security surveillance of prisoners in the prison housing unit or showers constituted a "search" within the meaning of the Fourth Amendment.[1]

Kent also charged that he was deprived of his Eighth Amendment right to be free from cruel and unusual punishment because the exposure of his naked body to female security guards caused him to suffer embarrassment and humiliation.

The Eighth Amendment affords prisoners protection against wanton infliction of physical pain or exposure to egregious physical conditions which deprive them of basic human needs or are otherwise incompatible with contemporary standards of humane treatment under like or similar circumstances. *Rhodes v. Chapman*, 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). A charge of cruel and unusual punishment cannot be anchored in a bare assertion of a purely subjective condition unsupported by physical manifestations of injury. Accordingly, Kent's purely subjective complaint of embarrassment and humiliation, standing alone, does not rise to the level of egregious treatment that would support a constitutional infringement under the Eighth Amendment.

For the reasons set forth above, I would exercise jurisdiction, reverse the trial court's dismissal of the First Amendment freedom of religion claim, and affirm the trial court's dismissal of the Fourth and Eighth Amendment claims.

## ON RECONSIDERATION

JONES, Circuit Judge.

Defendants-appellees have petitioned for an en banc rehearing of this case. Pursuant to this court's policy, the original panel has been given the initial opportunity to consider the petition and, if necessary, to amend or replace the decision of May 18, 1987. Because two recent decisions of the United States Supreme Court issued subsequent to the panel's decision impact the parties' relative burdens on remand, we hereby amend our prior opinion to incorporate specifically the standards set forth in *O'Lone v. Estate of Shabazz*, —— U.S. ——, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987) and *Turner v. Safley*, —— U.S. ——, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).

■ As the Court reaffirmed in *Turner*: "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests. In our view, such a standard is necessary if 'prison administrators ..., and not the courts, [are] to make the difficult judgments con-

---

**1.** The majority's reliance on *Grummett v. Rushen*, 779 F.2d 491 (9th Cir.1985), is misplaced. In that case, the court found it unnecessary to consider whether *Hudson* precluded a finding that the prisoners had an expectation of privacy because the prisoners' privacy interests, if they existed, were outweighed by the prison's interests in institutional security. See, *Grummett*, 779 F.2d at 496 n. 3.

cerning institutional operations' " — U.S. at ——, 107 S.Ct. at 2261 (quoting *Jones v. North Carolina Prisoners' Union*, 433 U.S. 119, 128, 97 S.Ct. 2532, 2539, 53 L.Ed.2d 629 (1977)). The *Turner* decision also identified four factors relevant to the determination of whether the prison regulation is in fact reasonable: (1) whether there is a "valid rational connection" between the regulation and the legitimate governmental interest which it allegedly furthers; (2) whether there are alternative means by which the inmate may exercise the right impinged; (3) what impact the accommodation of the inmate's constitutional right will have on guards, other inmates, or the allocation of prison resources generally; and (4) the existence or absence of ready alternatives to the regulation in question. *Id.* at —— – ——, 107 S.Ct. at 2262.

In further explaining the fourth factor, the Court in *Turner* stated:

> This is not a "least restrictive alternative" test: prison officials do not have to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint. But if an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at *de minimus* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard.

*Id.* at ——, 107 S.Ct. at 2262 (citation omitted). The Court in *O'Lone* reasserted this statement of deferential review: "Though the availability of accommodations is relevant to the reasonableness inquiry, ... placing the burden on prison officials to disprove the availability of alternatives ... fails to reflect the respect and deference that the United States Constitution allows for the judgment of prison administrators." —— U.S. at ——, 107 S.Ct. at 2405.

To summarize, we again note that plaintiff Kent's complaint was dismissed by the trial court for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). We hold here only that the pleadings reviewed are sufficient to withstand such a motion, given the liberalities with which such complaints are measured under the rule. Even applying the rational relationship standard of *Turner* and *O'Lone*, under which a court need only inquire whether prison regulations allegedly impinging an inmate's constitutional rights are "reasonably related" to legitimate penological interests, we must construe plaintiff's complaint liberally and accept as true all factual allegations therein. In remanding, we do not foreclose the possibility of a disposition short of trial if the further development of the factual issues shows that such issues are suitable for summary judgment under Rule 56. We emphasize that the trial judge on remand should apply carefully the analysis outlined in *Turner* and *O'Lone* to determine the validity of Kent's constitutional claims, and accordingly have amended our previous opinion to the extent that it may have suggested that Kent's factual allegations required relief as a matter of law. It is apparent also that our reference to language in *Grummett v. Rushen*, 779 F.2d 491 (9th Cir.1985), suggesting that prison authorities are bound to adopt the least intrusive means of accommodation, is inconsistent with the cited language from *Turner*. To the extent therefore that part II of our opinion of May 18, 1987 is contrary to the *Turner* and *O'Lone* standards discussed above, we now amend it to incorporate those standards.