**Reginald TENSLEY, Plaintiff,**

v.

**Brian ALEXANDER, Joseph Hosey, Linda Frentener, P. Schooler and Michael Phillips, Defendants.**

**No. 91–CV–70987–DT.**

United States District Court, E.D. Michigan, S.D.

May 26, 1993.

Daniel E. Manville, Ben M. Gonek, Detroit, MI, for plaintiff.

Chester S. Sugierski, State of Michigan, Dept. of Atty. Gen., Lansing, MI, for defendants.

## THE COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

GADOLA, District Judge.

### Background of Case

A bench trial was conducted in this matter.

In this case, plaintiff, a male inmate of the Michigan Maximum Correctional Facility at Standish, Michigan, maintains that his right to privacy under the Fourth and Fourteenth Amendments to the United States Constitution was violated by defendant P. Schooler, a female correctional officer at that institution. More specifically, plaintiff claims that whenever defendant Schooler would make her rounds and open his cell door window to make observation therein, she would quickly make observation and move on if he was not engaged in his bodily functions at the toilet, but if he were so engaged, with private parts of his body exposed, she would linger and watch him. Plaintiff does not challenge the right and duty of female officers to work within male segregation housing units or to make rounds or to make observations of male prisoners through the cell door windows in the performance of their duties, but he objects, rather, to the alleged manner in which the defendant made her observations of him, as aforesaid.

Plaintiff also claims that when an inmate is taken to a shower, he is locked into a shower stall which has a wire mesh door, in order that officers can make observation of the inmate, with such observation made from a glass "bubble area", where the controls to cell doors are located. Plaintiff claims that when he was in the shower cubicle, defendant would lean to the side of the bubble area and stare at him while he was naked and taking a shower, that there was no security or correctional purpose for this alleged action by her, and that her conduct in this regard also served only to violate his right to privacy under the Fourth and Fourteenth Amendments.

Defendant Schooler denies plaintiff's allegations and asserts that her observations of him were only made in the proper discharge of her duties as a corrections officer in the prison.

Plaintiff makes no claim that the prison authorities had an improper policy of assigning female officers to supervise and observe male prisoners.

The court hereinafter augments and further specifies its findings of facts and conclusions of law, as previously set forth upon the record in open court. (See pages 172–180 of the trial transcript herein).

### Findings of Fact

Plaintiff was assigned to the administration segregation unit of the prison.

The Administrative Segregation Units of prisons are the highest security level units which are reserved for the most dangerous and/or disruptive of prisoners. Prisoners in administrative segregation are fed in their cells, are escorted by two or more staff members for all out-of-cell movements, and are required to be handcuffed and leg shackled for all out-of-cell movements. They have

isolated yard periods and their showers are limited to specific time periods each week. At the Standish Maximum Facility the administrative segregation cells have a solid door with a narrow glass window which is covered with a solid shutter. This shutter is opened only to observe the prisoner every 30 minutes during rounds or when approaching the cell to communicate with the prisoner for things such as meals, showers, etc. The cells are equipped with a combination toilet/sink which is set at a 45 degree angle from the wall containing the cell door. A prisoner can shield himself while urinating by simply keeping his back to the cell door. While defecating a prisoner can use his cell towel to prevent his buttocks from being viewed. In a similar manner a prisoner can use his towel to wrap around his body if he decides to give himself a "sink bath". A prisoner can also plan his in-cell activities around the routines of the cell block which include meals, showers, yard time, and 30 minute checks. The nature of the Administrative Segregation Unit and the prisoners housed there makes it impossible for prisoners to be given the freedom to cover their cell door windows or their outside windows.

When administrative segregation prisoners are taken out of their cells for showers they are required to wear a towel, shorts or pajama bottoms. They are placed in restraints before they exit their cells. They are escorted by two or more corrections officers. They are placed in a shower cell which is a large shower with a steel mesh shower door and solid walls on the other three sides. The shower head is on the back wall of the shower opposite the door. Once they are locked in the shower their restraints are removed. If he chooses, a prisoner can stuff two corners of his towel into the mesh door to serve as a modesty screen, thereby shielding the portion of his body below the waist from view.

The plaintiff was, during January and February of 1991, an inmate of the Standish Maximum Correctional Facility. During that period of time, he was housed in Administrative Segregation Unit Number 1. The Standish facility is a maximum security facility for prisoners who have been convicted of serious offenses, and/or who pose some security problem. Further, the administrative segregation unit within that facility is for prisoners who have been especially difficult, have discipline problems, and are therefore not permitted to mingle with the general prison population.

The court also finds as a matter of fact that the defendant P. Schooler was a corrections officer in that institution during the period of January and February, 1991, and was assigned to the Administrative Segregation Unit Number 1 in which the plaintiff was housed, and that the particular cell occupied by the plaintiff in Segregation Unit Number 1 was cell number 240.

The court has observed and scrutinized the various exhibits that have been introduced which basically are photographs of either the cell from the exterior or the interior, and of the shower stall, mostly from the exterior. There is one photograph that appears to be from the interior of the shower cell, which is taken from the exterior also, which shows a bath towel covering the lower portion of the wire mesh shower door.

The court finds as a matter of fact that on various occasions, the defendant did, in fact, observe the plaintiff while he was in his cell, number 240, and at the toilet performing his bodily functions. That she made that observation through the door cover on the cell door, which can be unlatched by a corrections officer from the outside, and opened so that the corrections officer can make observation into the cell. The court also finds as a matter of fact that those observations were made periodically by the defendant while making rounds. That it was required of corrections officers that they make rounds approximately every 30 minutes in order to observe what was going on inside the various cells, and that this would ordinarily be accomplished by unlatching the door cover on the cell door, opening that, and then looking through the window into the cell itself, and observing the prisoner. That if the prisoner appeared to be alive and well, and nothing untoward was occurring then the corrections officer would ordinarily then close the door cover over the window in the cell door and

proceed to the next cell to make the same sort of an observation.

Further, that in making that observation through the window in the cell door, after unlatching the door cover, it was possible for the corrections officer to observe a prisoner, and, in fact, she did observe this particular prisoner at times while the prisoner was at the toilet, either urinating or defecating. Further, that the defendant followed those prescribed procedures and did not unnecessarily or in a lengthy manner intrude upon plaintiff's privacy.

The court further finds as a fact established herein that the prisoners in the administrative segregation unit were taken to the shower facility, the shower room, three times weekly to shower. That they would be escorted by corrections officers in handcuffs at that time, and that they would be required to be wearing either shorts, underwear or a towel wrapped about their bodies when they made that journey from the cell to the shower area, and that they would also take with them soap and shampoo. That upon arriving at the shower they would be caused to enter the shower stall, and then a metal mesh door would be closed and locked, and the inmate then would extend his hands through a slot in that door so that the handcuffs could be removed. The court also finds that the inmate, contrary to what the plaintiff has said, would be allowed to take the towel inside the shower stall or the shower room.

The court further finds that corrections officers could observe the prisoner within the shower stall by looking through this mesh door from a glass bubble area, and that as a matter of fact, it was a responsibility of a corrections officer to maintain some observation of a prisoner inside the shower by making an observation from this bubble area. The court can only assume that this is why the door to the shower was a mesh type door, so that observation could be maintained of the prisoner within the shower.

The court finds that from the testimony in this matter, the observation from this glass bubble area to the shower is from a distance of some 30 to 40 feet from the shower room. The court finds that it was the responsibility of a corrections officer to make that observation of prisoners in the shower.

Here, the court does find that the defendant in this case was carrying out the prison policy by making observation of a nude male prisoner within the shower stall from the bubble area. That was one of the requirements of her position, one of her responsibilities. That she was also in the performance of her duties and responsibilities when she made observation through the window in the cell door of the prisoner, and, by happenstance, sometimes when she opened that door cover, unlatched it and opened it and looked through the window in the cell door, found the inmate to be at the toilet performing bodily functions.

The court finds as a matter of fact that there has been no establishment of the allegation that the defendant unreasonably, unnecessarily or unconstitutionally observed this plaintiff. There may be a difference of opinion as to whether two seconds or three seconds was enough, or whether ten seconds was required to make the observation, but defendant was required to make the observation. That was the prison policy, and apparently it has been mandated to some extent by this court. Her responsibilities included observing prisoners in their cells, even though they might happen to be at the toilet when the observation was made. They also included the responsibility of being in this bubble area and observing naked male prisoners at the shower or in the shower.

The court further finds as a matter of fact that if a prisoner did find that he was being observed through the cell door window while at the toilet, he could turn his back and use the toilet, and, therefore, conceal his private parts from observation by the corrections officers.

The court further finds that insofar as the matter of defecating is concerned, it would seem to the court from the testimony, and from observing the exhibits and the photographs, that the only portion of the prisoner's body that might be observed while he was seated on the commode was basically the upper left thigh and left hip area of the inmate's body and not the private parts if the prisoner was seated on the commode.

Insofar as the shower is concerned, the court does find that while there was some opportunity to observe the prisoner, albeit from some distance of 30 to 40 feet from the shower, there was the opportunity for the prisoner, if he wished to maintain modesty, to drape the towel or attach the towel to the bar that ran across the middle of the door, and, therefore, conceal his person from the waist down from the observation of a corrections officer in the glass bubble area some 30 or 40 feet away. This was a permissible procedure for the prisoner to implement if he so desired.

Defendant Schooler did not prevent the plaintiff from using any of the means available to him to maintain his modesty or privacy. She did not stare at plaintiff in order to harass or humiliate him in any manner. Her observations of the plaintiff were done solely as part of her obligations as a corrections officer to maintain the order and security of the facility. In fact the plaintiff failed to use the means available to him to maintain his modesty and/or has intentionally exposed himself to male and female corrections officers. In fact, on at least one occasion, while in the shower, he deliberately exposed and exhibited his penis to defendant, brandishing it in his hand and making an obscene comment to her.

### Conclusions of Law

The issue of the wisdom or the propriety or the constitutionality of the prison's policy in assigning female corrections officers to a male prison is not involved in this litigation. Plaintiff makes no challenge herein to that policy which has previously been upheld in the Eastern District of Michigan. See *Kent v. Johnson,* No. 84–CV–71307–DT (E.D.Mich.) being the ruling on remand of *Kent v. Johnson,* 821 F.2d 1220, 1227 (6th Cir.1987), in which the District Court applied to the Michigan prison policy the four factors set forth in *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), and found that the policy of the Michigan correctional system was reasonable and appropriate, in calling for the hiring of female correctional officers on a nondiscriminatory basis to serve in male penal institutions, within the Michi-gan Department of Corrections. See also *Griffin v. Michigan Dept. of Corrections,* 654 F.Supp. 690 (E.D.Mich.1982) in which the former policy of the Michigan Department of Corrections, which forbade the employment of women in maximum security facilities, was declared unlawful.

The court finds as a matter of law that there was no invasion of plaintiff's privacy in this matter which would constitute a denial of his rights under the Fourth and Fourteenth Amendments to the U.S. Constitution. Rather, the observations made of him by defendant Schooler were made in the necessary and appropriate discharge of her duties as a corrections officer, in order to provide necessary security in the institution.

The viewing of plaintiff by defendant was not done in such manner or with such frequency or intent to unlawfully invade plaintiff's privacy rights, which are of course necessarily and appropriately limited and restricted in a prison setting.

Defendant Schooler was properly fulfilling her duties and responsibilities in this matter, and proper deference should be afforded to her in the discharge of her duties regarding institutional matters and procedures. *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987); *Block v. Rutherford,* 468 U.S. 576, 588, 591, 104 S.Ct. 3227, 3233, 3235, 82 L.Ed.2d 438 (1984); *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

The actions of defendant Schooler were, under the subject prison situation, appropriate and reasonable and were not violative of plaintiff's constitutional rights. *Thornburgh v. Abbott,* 490 U.S. 401, 109 S.Ct. 1874, 104 L:Ed.2d 459 (1989); *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 349, 107 S.Ct. 2400, 2404, 96 L.Ed.2d 282 (1987); *Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977); *Walker v. Mintzes,* 771 F.2d 920 (6th Cir. 1985).

The conduct of defendant Schooler did not, under the factors set forth in *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987) violate plaintiff's constitutional right to privacy. See in that regard

416

*Kent v. Johnson,* 821 F.2d 1220, 1227 (6th Cir.1987), and on remand *Kent v. Johnson,* No. 84–CV–71307–DT (E.D. of Mich.).

It should also be noted that, as aforesaid, plaintiff had adequate opportunity to protect his modesty by turning his back while at the toilet, or using a towel draped on the shower door to conceal his body below the waist while in the shower.

### *Judgment*

Accordingly, judgment of no cause for action will be entered in favor of defendant Schooler.