Beniam A. JOHNSON, Plaintiff,

v.

CITY OF KALAMAZOO, Jamie Edwards, Henry Damsteegt and Jim Williams, Defendants.

Michael D. Mann, Plaintiff,

v.

City of Kalamazoo, Gretchen Mayo and Kathy Mattmueller, Defendants.

Malcolm Robinson, Plaintiff,

v.

City of Kalamazoo, Jason Colyer, Timothy Tull and Jim Williams, Defendants.

Troy L. Coleman, Plaintiff,

v.

City of Kalamazoo, Cory Ghiringhelli and Frances Orfin, Defendants.

Nos. 4:00–CV–44, 4:00–CV–45, 4:00–CV–48, 4:00–CV–80.

United States District Court, W.D. Michigan, Southern Division.

Dec. 11, 2000.

Frederick Eagle Royce, III, James R. Hyman, Jr., Kalamazoo, MI, for Plaintiff.

Richard A. Milligan, Kalamazoo City Attorney's Office, Kalamazoo, MI, for Defendants.

**OPINION OF THE COURT ON THE CITY'S MOTIONS FOR JUDGMENT ON THE PLEADINGS**

MCKEAGUE, District Judge.

In these four actions, consolidated before the undersigned for limited pretrial purposes, plaintiffs allege they were detained in the Kalamazoo City Jail for varying periods of time, clad only in their underwear. Each of plaintiffs' complaints contains six counts, stating claims against the City of Kalamazoo and individual officers who participated in the complained of detention. On November 20, 2000, all of plaintiffs' claims against the individual defendants were voluntarily dismissed. Now before the Court are the motions of defendant City of Kalamazoo for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). The Court heard oral arguments on September 18, 2000, and has duly considered briefs submitted in support of and in opposition to defendant's motions. For the reasons that follow, the motions will be granted.

## I. FACT ALLEGATIONS

Plaintiff Beniam A. Johnson alleges he was arrested by a Kalamazoo public safety officer on March 15, 1999. When asked if he was suicidal during intake at the City jail, Johnson refused to answer. He was ordered to remove his pants in the presence of female officers and then placed in a cell dressed only in his underwear, t-shirt, socks and "flip-flops." Johnson alleges he was detained in this condition for 30 minutes, in a cell where he was subject to monitoring by video camera.

Plaintiff Michael D. Mann alleges he was arrested by a Kalamazoo public safety officer on November 26, 1999 and transported to the City jail. When Mann was asked if he was suicidal, he refused to answer. In the presence of female officers, he was placed in a cell wearing only underwear, t-shirt, socks and flip-flops, and was kept there in this condition from 8:55 p.m. on November 26th until 2:20 p.m. the following day.

Plaintiff Malcolm B. Robinson was arrested by a Kalamazoo public safety officer on September 16, 1998. As Robinson was processed in at the City jail, his clothing was sprayed with pepper spray. Robinson's outer clothing was removed in the presence of female officers and he was placed in a cell wearing only his underwear. He was allegedly kept there from 7:00 a.m. until 4:15 p.m. on September 16th.

Plaintiff Troy L. Coleman was arrested by a Kalamazoo officer on November 13, 1999. During intake at the City jail, Coleman refused to answer questions, was ordered to remove his outer clothing, and was placed in a cell wearing only his underwear. Plaintiff was subject to visual monitoring by video camera. He was kept there in this condition from 3:30 a.m. until 1:00 p.m. on November 13th.

The City's position is that a detainee's clothing was to be totally removed as a precautionary measure if he claimed to be suicidal or refused to answer whether he was suicidal. Upon removal of the detainee's clothing, he was to be issued a "suicide gown." In each of these four cases, it appears no suicide gown was available. For this reason, each plaintiff was allowed to retain his underclothing.

## II. PLAINTIFFS' CLAIMS

Each of plaintiffs' complaints contains the same six claims, praying for relief exclusively in the form of monetary damages. Counts I and V contain claims exclusively against individual officers, which claims have been voluntarily dismissed. Count II contains a federal civil rights claim against the City of Kalamazoo under 42 U.S.C. § 1983. Each plaintiff alleges the City violated his Fourth Amendment privacy rights and Fourteenth Amendment equal protection and substantive due process rights by detaining him clad only in his underwear. The City is said to be liable because the individual officers allegedly

acted pursuant to official policy or practice. In count III, each plaintiff alleges the City is liable under § 1983 for the officers' wrongful conduct because the City failed to properly train them. Count IV is similar to count II, asserting the City is liable under § 1983 for the officers' conduct because their actions were taken pursuant to a "policy" of deliberate indifference to the civil rights of detainees. Count VI contains a claim for violation of Michigan's Constitution, asserting defendant City deprived each plaintiff of equal protection and substantive due process.

Plaintiffs have not pled facts specifically supporting their claims for denial of equal protection. At the hearing conducted on September 18, 2000, the Court confronted plaintiffs' counsel with this pleading deficiency. Counsel conceded that the complaints were not well-drafted and made no objection to the Court's bench ruling dismissing all claims for denial of equal protection.[1]

### III. STANDARD OF REVIEW

The City's motions for judgment on the pleadings test the legal sufficiency of the pleadings. The Court must construe the complaints in the light most favorable to the plaintiffs, accept all fact allegations as true, and determine whether the plaintiffs undoubtedly can prove no set of facts in support of their claims that would entitle them to relief. *Mixon v. State of Ohio,* 193 F.3d 389, 400 (6th Cir.1999); *Grindstaff v. Green,* 133 F.3d 416, 421 (6th Cir. 1998). While the Court is required to accept all well-pled fact allegations as true, the Court need not accept proffered legal conclusions or unwarranted factual inferences as true. *Mixon,* 193 F.3d at 400; *Grindstaff,* 133 F.3d at 421.

### IV. § 1983 LIABILITY

In counts II, III and IV of their complaints, plaintiffs seek damages under 42 U.S.C. § 1983 for violation of their federally protected civil rights under color of state law. The City of Kalamazoo cannot be held liable under § 1983 for the actions of its employees pursuant to the doctrine of *respondeat superior. Board of County Commissioners of Bryan County, Oklahoma v. Brown,* 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). To impose liability on the City, plaintiffs must show that a violation of their civil rights was caused by a municipal "policy" or "custom." *Id.* Further, as a threshold matter, plaintiffs must show that the actions allegedly taken pursuant to official policy or custom deprived them of some federally recognized civil right. *Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). In moving for judgment on the pleadings, the City contends that even if plaintiffs were to prove all the facts alleged, they would not be entitled to any relief because detention in their underwear for brief periods of time does not implicate any constitutional or otherwise federally recognized civil right.

### A. Fourth Amendment Privacy

Plaintiffs allege first that detention in their underwear violated their right of privacy under the Fourth Amendment. However, they cite no authority specifically supporting this proposition.

The applicability of the Fourth Amendment turns on whether the person invoking its protection can claim a justifiable, reasonable, or legitimate expectation of privacy that has been invaded by government action. *Hudson v. Palmer,* 468 U.S. 517, 525, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). In *Hudson,* the court recognized that while prisoners are not beyond the reach of the Constitution, "curtailment of certain rights is necessary, as a practical matter, to accommodate a 'myriad of

---

1. The Court expressly provided that this ruling was made without prejudice to plaintiffs' right to amend their complaints upon proper motion. In the meantime, plaintiffs sought leave to amend, but subsequently withdrew their motions. The motions for leave to amend were therefore denied by order dated November 8, 2000.

institutional needs and objectives' of prison facilities, . . . . chief among which is internal security." *Id.* at 523–24, 104 S.Ct. 3194 (internal citation omitted). The court went on to hold "that society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell." *Id.* at 526, 104 S.Ct. 3194. Further, "[a] right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." *Id.* at 527–28, 104 S.Ct. 3194.

*Hudson* thus upheld, against Fourth Amendment challenge, a policy permitting random cell searches. The court recognized the risk that "random" searches could be conducted out of malicious motive, strictly for the purpose of harassing inmates. The court expressly disavowed any intent to condone such abuse, but held that the appropriate remedy is found not in the Fourth Amendment, but in the Eighth Amendment prohibition against cruel and unusual punishments, or in state tort law. *Id.* at 528–30, 104 S.Ct. 3194.

At least one court has construed *Hudson* as holding categorically that "the Fourth Amendment does not protect privacy interests within prisons." *Johnson v. Phelan*, 69 F.3d 144, 150 (7th Cir.1995). Yet, other courts, including the Sixth Circuit, have recognized that inmates retain limited rights to bodily privacy under the Fourth Amendment. *See Cornwell v. Dahlberg*, 963 F.2d 912, 916 (6th Cir.1992); *Moore v. Carwell*, 168 F.3d 234, 236–37 (5th Cir.1999); *Peckham v. Wisconsin Dept. of Corrections*, 141 F.3d 694, 697 (7th Cir.1998) (narrowing *Johnson v. Phelan*); *Somers v. Thurman*, 109 F.3d 614, 618–19 (9th Cir.1997); *Fortner v. Thomas*, 983 F.2d 1024, 1030 (11th Cir.1993); *Covino v. Patrissi*, 967 F.2d 73, 78 (2nd Cir. 1992).

■ In *Bell v. Wolfish*, 441 U.S. 520, 559, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) cited with approval in *Cornwell*, the Supreme Court employed a "reasonableness" standard in evaluating Fourth Amendment rights of a pretrial detainee, considering "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *If* a regulation or policy is deemed to impinge on Fourth Amendment rights, it will nonetheless be upheld as valid if it is reasonably related to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987); *Cornwell*, 963 F.2d at 916. This rational relationship test requires weighing several factors, such as:

> (1) whether there is a valid, rational connection between the prison policy and the legitimate governmental interest asserted to justify it; (2) the existence of alternative means for inmates to exercise their constitutional rights; (3) the impact that accommodation of these constitutional rights may have on other guards and inmates, and on the allocation of prison resources; and (4) the absence of ready alternatives as evidence of the reasonableness of the regulation.

*Id.* at 917.

■ Defendant City contends that each plaintiff's outer clothing was removed as a suicide prevention measure, in response to the plaintiff's refusal to answer the intake question as to whether he was suicidal.[2] Its response was appropriate, the City contends, because otherwise, its "deliberate indifference" to a detainee's psychological needs that might result in suicidal tendencies could be deemed a denial of due process. *See Horn v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994). Yet, even apart from the reasonableness of this justification, the City ar-

---

**2.** The City maintains there are minor variances in the facts relating to the different plaintiffs, but acknowledges they are immate-

rial for purposes of the present motion, as plaintiffs' allegations are accepted as true.

gues that plaintiffs have failed to state a valid claim because the nature of the intrusion upon their privacy interests was so minor as to not rise to the level of a Fourth Amendment violation.

Defendant identifies several significant circumstances. First, plaintiffs were not stripped naked; they were allowed to keep their underwear and t-shirts and maintain a minimal measure of modesty. Second, the City notes the relatively short duration of A each plaintiff's underwear confinement; the shortest period being 30 minutes, and the longest being 18 hours and 25 minutes. Further, in their claims against the City, none of the plaintiffs have alleged he was subject to close or continuous observation by females. These circumstance, the City contends, distinguish plaintiffs' claims from those which have been found to implicate cognizable Fourth Amendment privacy interests.

Apart from *Hudson v. Palmer*, plaintiffs have cited no case law authority in support of their Fourth Amendment claim. As discussed above, *Hudson* affords plaintiffs only very weak, if any, support, the Supreme Court having held that prisoners do not have a Fourth Amendment right of privacy in their cells. In *Cornwell v. Dahlberg*, 963 F.2d at 916, the Sixth Circuit recognized the facial validity of a Fourth Amendment invasion of privacy claim where male prisoners were allegedly strip searched outside in the prison yard in the presence of other inmates and female officers. In *Kent v. Johnson*, 821 F.2d 1220 (6th Cir.1987), the court held that a Fourth Amendment challenge to a prison policy requiring male prisoners to expose their naked bodies to regular and continuous surveillance by female officers was facially valid. Similarly, other courts that have recognized prisoners' bodily privacy interests have done so in the context of relatively serious intrusions, comparable to those presented in *Cornwell* and *Kent. See Moore*, 168 F.3d at 236 (cross-gender strip searches); *Peckham*, 141 F.3d at 697 (strip searches); *Somers*, 109 F.3d at 618–22

(cross-gender body cavity searches and cross-gender surveillance of prisoners while naked); *Fortner*, 983 F.2d at 1028–30 (cross-gender surveillance of prisoners while naked); *Covino*, 967 F.2d at 77–80 (body cavity searches).

The instant claims do not involve an intrusion of any such magnitude. Plaintiffs were allowed to keep their underwear and t-shirts, clothing no more revealing than a swimsuit. They do not allege that they were forced to expose their genitals in the presence of female officers. The period of each plaintiff's confinement in his underwear was of limited duration immediately after intake at the jail. Given plaintiffs' refusal to cooperate fully, a fact essentially admitted by each plaintiff in his complaint, this initial period of observation presumably afforded detention officers fair opportunity to ascertain that plaintiffs were not suicidal before allowing them to have articles of clothing which otherwise might have posed some risk of self-inflicted harm.

In the wake of *Hudson*, the contours of prisoners' minimal privacy rights are still being defined by the courts. However, in view of the total absence of legal authority to support plaintiffs' Fourth Amendment claims, the Court is convinced that society is not prepared to recognize as legitimate any subjective expectation by a prisoner that he may not be confined even for a short period of time clad only in his underwear.

Applying the *Bell v. Wolfish* reasonableness standard to plaintiffs' allegations yields the same conclusion. The nature and duration of the intrusions upon privacy were minimal. Further, the City's asserted justification for the intrusions (tacitly recognized in plaintiffs' pleadings), i.e., discharging its obligation to secure inmates' safety, is plausible and reasonable.

Because plaintiffs' allegations thus fail to make out a Fourth Amendment violation, it is not necessary or appropriate to analyze the alleged policy under the rational

relationship standard of *Turner v. Safley.* Defendant City of Kalamazoo is entitled to judgment on the pleadings with respect to plaintiffs, § 1983 claims to the extent they are based on asserted Fourth Amendment violations.

### B. Fourteenth Amendment Due Process

■ Plaintiffs also allege that their underwear confinement constituted a denial of due process. Indeed, pretrial detainees, who have not been convicted of any crime, retain at least those constitutional rights enjoyed by convicted prisoners. *Bell,* 441 U.S. at 545, 99 S.Ct. 1861. Thus, although pretrial detainees are not technically within the protection of the Eighth Amendment prohibition against cruel and unusual punishment, they receive analogous protection under the Due Process Clause of the Fourteenth Amendment. *County of Sacramento v. Lewis,* 523 U.S. 833, 849–50, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998); *Horn,* 22 F.3d at 660.

■ The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain." *Ingraham v. Wright,* 430 U.S. 651, 670, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977); *Talley–Bey v. Knebl,* 168 F.3d 884, 886 (6th Cir.1999). The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Conditions of confinement are "sufficiently serious" to make out an Eighth Amendment violation only if they result in the denial of "the minimal civilized measure of life's necessities." *Id.* at 834; *Talley–Bey,* 168 F.3d at 886; *Rodgers v. Jabe,* 43 F.3d 1082, 1086 (6th Cir.1995). This is the "objective component" of an Eighth Amendment conditions of confinement claim. *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); *Rodgers,* 43 F.3d at 1086. If the objective component is satisfied, plaintiffs must also meet a second requirement, the "subjective component." That is, plaintiffs must

show that defendant acted with a "sufficiently culpable state of mind." *Wilson,* 501 U.S. at 298, 111 S.Ct. 2321. In the conditions of confinement context, the sufficiently culpable state of mind is defined as "one of 'deliberate indifference' to inmate health or safety." *Farmer,* 511 U.S. at 834, 114 S.Ct. 1970.

■ The City argues that even though plaintiffs' short-term detention in their underwear may have been uncomfortable, they have not alleged a sufficiently serious deprivation of "life's necessities" to satisfy the objective component. Again, plaintiffs have failed to identify case law specifically supporting their due process claims. Nor has the Court uncovered any.

In *Kent v. Johnson, supra,* the Sixth Circuit observed in 1987 that no federal court had yet held that subjecting male prisoners, while naked in the shower, to surveillance by female officers constituted an Eighth Amendment violation. 821 F.2d at 1227. Nonetheless, the *Kent* court vacated the dismissal of such a claim where the plaintiff alleged "that female prison guards [had] allowed themselves unrestricted views of his naked body in the shower, at close range and for extended periods of time, to retaliate against, punish and harass him for asserting his right to privacy." *Id.* at 1227–28. In other words, the Sixth Circuit recognized that cross-gender surveillance of naked prisoners could conceivably, under some circumstances, satisfy the objective component of a conditions of confinement claim. The court distinguished the alleged facts before it from "occasional and almost inadvertent sightings" by female guards, which would not be actionable. *Id.* at 1228.

Since *Kent,* the "possibility" that cross-gender surveillance of naked prisoners could rise to the level of an Eighth Amendment violation has not been developed in the case law. In fact, in *Somers v. Thurman,* 109 F.3d at 622, allegations that female officers conducted visual body cavity searches of male prisoners and watched

male prisoners while showering naked were held by the Ninth Circuit to be insufficient to satisfy the objective component of an Eighth Amendment claim. However, in another Ninth Circuit ruling, *Henry v. County of Shasta*, 132 F.3d 512 (9th Cir.1997), the court described as "blatantly unconstitutional," a policy or custom of "stripping persons who have committed minor traffic infractions, throwing them naked into a 'rubber room' and holding them there for ten hours or more for failing to sign a traffic ticket or asserting their legal right to be brought before a magistrate." *Id.* at 520. The court failed to identify the nature of the constitutional violation, as its analysis focused on the question of municipal liability for a policy or custom under § 1983. Presumably, the *Henry* court found Shasta County officials' alleged treatment of Henry violative of his due process rights as a pretrial detainee. Under any construction, however, it is clear that Henry's having been stripped naked was a critical consideration.

Here, in contrast, plaintiffs have not alleged that they were stripped naked at all. Neither have they alleged, in the claims pending against the City, that they were subject to regular and continuous surveillance by female officers. At worst, they allege they were required to remove their outer clothing in the presence of female officers and then were subject to video surveillance—possibly by female officers— while wearing only underwear and t-shirts. In comparison with the clearly more egregious conditions of confinement held to fall below the "minimal civilized measure of life's necessities," the instant alleged facts clearly fall short. *See Somers*, 109 F.3d at 623 (collecting cases).

Also distinguishable are the facts of *Rushing v. Wayne County*, 436 Mich. 247, 250, 462 N.W.2d 23 (1990), where a female pretrial detainee was, as a suicide prevention measure, kept in a "semi-naked state [underpants only] for four days and exposed to repeated [unnecessary] observation by members of the opposite sex during her detention." The Michigan Supreme Court vacated the trial court's order granting the defendants a directed verdict. The *Rushing* court concluded the plaintiff had established a colorable claim for invasion of privacy or deprivation of liberty without due process insofar as she was forced to expose private body parts to unnecessary viewing by males, including officers, a janitor (on repeated occasions) and a group of 10 or 12 students. *Id.* at 263–65, 462 N.W.2d 23. Again, the *Rushing* facts are clearly more egregious, in terms of exposure and duration, than the instant facts.

There is "a *de minimus* level of imposition with which the Constitution is not concerned." *Ingraham*, 430 U.S. at 674, 97 S.Ct. 1401; *Tesch v. County of Green Lake*, 157 F.3d 465, 476 (7th Cir.1998). Plaintiffs' confinement in their underwear for a matter of some hours may well have been uncomfortable and demeaning, but the allegations do not, as a matter of law, rise to the level of a constitutional violation. Plaintiffs' claims for violation of the Due Process Clause of the Fourteenth Amendment do not satisfy the requisite objective component. Thus, even if plaintiffs managed to prove all of the facts alleged, they would not be entitled to relief. It follows that they have failed to plead valid claims upon which relief can be granted and the City is entitled to judgment on these claims as well.

## V. DUE PROCESS UNDER MICHIGAN CONSTITUTION

■ In count VI of their complaints, plaintiffs allege the City is liable for violating their due process rights under the Michigan Constitution. The due process protections afforded by the Michigan Constitution are co-extensive with those afforded under the United States Constitution. *American States Ins. Co. v. State of Michigan Department of Treasury*, 220 Mich.App. 586, 589 n. 1, 560 N.W.2d 644 (1996). Accordingly, the analysis con-

tained in part IV above applies with equal force to plaintiffs' count VI claims.

## VI. CONCLUSION

For all the foregoing reasons, defendant City of Kalamazoo is entitled to judgment on the pleadings on all of plaintiffs' remaining claims. Plaintiffs have failed to allege facts which, even if proven, would entitle them to relief under 42 U.S.C. § 1983 or under state law for violation of their constitutional rights to privacy and due process. A judgment order consistent with this opinion shall issue forthwith, awarding judgment to the City on all of plaintiffs' remaining claims against it.