James ABNER, III, Adan Alamaguer Alaniz, Jason Baase, Richard Bauman, Anita Benavidez, Jerry Boose, Robert Brewer, Jr., La'Shaundria Carson, Francisco Castillo, Steven Clark, Jacob Coronado, Carl Delaney, Kris Doud, Sr., David Eudis, Jonathan Flora, Mary Franz, Judith Glesmer, James Hahn, L.C. Harris, Jr., Corneathia Harvey, Donald Hasse, Joshua Jekel, Brad Johnson, Mander Johnson, Jr., Viella Johnson, Dennis Jolin, Brad Kuznicki, Wardell Laury, Rachel Ledesma, Donta Lee, Jason Luchtman, Linda Luebbert, William Maxie, Jr., Matthew Mcdiarmid, Douglas Merrow, Michael Nothelfer, Rodney O'Connor, George Ostland, Benny Parker, Barbara Perkins, Scott Perreault, Brenda Pichotte, Brett Podoba, Richard Pool, Casey Quinnan, Daniel Roland, Antrovel Smith, Kurt Stemple, James Stewart, Maurice Thompson, Valentino Torres, Dantae Tyson, James Willis, Brian Coon, Mae Cork, Raymond Gotham, Jr., Kristin Hatfield, Christine Itter, Antoine Jakes, Michael Jewell, Carol Lamphere, Lee Reardon, Warren Strong, Plaintiffs,

v.

COUNTY OF SAGINAW COUNTY, Charles Brown, Saginaw County Sheriff, in his official and individual capacities, Arnold J. Burns, Saginaw County Under–Sheriff, in his official and individual capacities, Lt. William Gutzwiller, in his official and individual capacities and Officers John Doe and Jane Doe, in their individual capacity, jointly and severally, Defendants.

No. 05–10323.

United States District Court, E.D. Michigan, Southern Division.

July 19, 2007.

Christopher J. Pianto, Loyst Fletcher, Jr., Fletcher, Wolf, Flint, MI, Michael L. Pitt, Pitt, McGehee, Stephen F. Wasinger, Royal Oak, MI, for Plaintiffs.

James E. Tamm, O'Connor, Degrazia, Bloomfield Hills, MI, for Defendants.

*OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS OR FOR SUMMARY JUDGMENT, GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT, AND SCHEDULING STATUS CONFERENCE*

LAWSON, District Judge.

Prior to January 2005, the Saginaw County sheriff followed a policy of placing all pretrial detainees and others consigned to administrative segregation in a single-inmate observation cell without any clothing. In *Rose v. Saginaw County*, 353 F.Supp.2d 900 (E.D.Mich.2005), the Court held that the County's policy of removing all clothing from pretrial detainees housed in administrative segregation violated the detainees' due process rights. The Court reasoned that the policy was an exaggerated response to the County's articulated concerns about the danger of inmate suicide, the jail guards' safety, and administrative costs, especially in light of the magnitude of the right to privacy in one's own body and the availability of alternatives to the policy (such as suicide gowns). The Court also found that the policy was unreasonable under the Fourth Amendment because the scope of the intrusion was substantial and the pretrial detainees had a legitimate expectation that they would not be required to forfeit all clothing and covering, even for a brief time, when they had been detained for relatively minor violations; there was no individualized suspicion of drug, weapon, or contraband possession; and there was no indication that they were suicidal. *Rose*, 353 F.Supp.2d at 922–23. At the time the opinion was filed, the complaint in that case had been amended several times to add additional plaintiffs. In the opinion, the Court also denied the plaintiffs' motion to add even more plaintiffs and stated that "[a]dding new parties as plaintiffs would serve to further complicate the litigation" because extensive discovery had already taken place and the defendants' assertion that the statute of limitations barred many of the new plaintiffs' claims. *Id.* at 926. The Court suggested that any new claimants not barred by the statute of limitations could file their own lawsuits.

Thereafter, counsel for the *Rose* plaintiffs belatedly moved to certify the action as a class action, which the Court denied, *see Rose v. Saginaw County*, 232 F.R.D. 267, 272 (E.D.Mich.2005), they filed another putative class action entitled *Brabant, et al. v. County of Saginaw*, docket number 05–10030, and they filed the present action on behalf of several additional individuals. According to the complaint, the plaintiffs in this case are not all similarly situated as the *Rose* plaintiffs. They all claim to have been placed in a segregation cell, but some were naked and others were partially naked (with a paper gown, vest, or blanket), for varying periods of time. Some of the plaintiffs were pretrial detainees, while others had been convicted of a crime at the time of their segregation.

The plaintiffs allege that the manner in which they were stripped and the conditions in which they were kept amount to an unconstitutional violation of their right to privacy. The original complaint was filed December 16, 2005 and included 53 plaintiffs. The amended complaint, filed March 3, 2006, names 63 plaintiffs. Federal Rule of Civil Procedure 56 requires the Court to consider "the pleadings, depositions, answers to interrogatories, and admissions on file" in deciding a summary judgment motion. Fed.R.Civ.P. 56(c). The rule is flexible, and "court[s] may consider any material that would be admissible or usable at trial." Wright & Miller, Fed. Practice and Procedure § 2721. The

timing for accepting evidence is a matter left to the Court's discretion.

On February 28, 2006, the plaintiffs filed a motion for summary judgment, and the defendants filed a motion for judgment on the pleadings or in the alternative for summary judgment. The defendants argue that the plaintiffs who were given gowns or who had been convicted of a crime have not suffered constitutional violations. They also claim that the statute of limitations has expired for many of the plaintiffs, and at least one claim is barred by the Prison Litigation Reform Act because that plaintiff was incarcerated on the date the complaint was filed and failed to exhaust his administrative remedies. The plaintiffs argue that the logic of the Court's *Rose* decision applies equally to post-conviction detainees and those given gowns. They claim the statute of limitations has not expired because it was tolled by other litigation challenging the same policy.

The Court heard argument on the motion on June 30, 2006. The Court now finds that the jail's policy of requiring detainees in segregation to remove their clothes and put on paper gowns is reasonably related to legitimate penological interests. The individual defendants are entitled to qualified immunity on the claims of all *Abner* plaintiffs. In addition, many of the plaintiffs' claims are barred by the three-year statute of limitation. The *Rose* litigation did toll the limitations period for those plaintiffs whose claims are the same as the *Rose* plaintiffs, but only when the *Rose* plaintiffs actually were seeking to represent and certify a class, which did not occur until later in that case. The *Abner* plaintiffs are not entitled to any tolling from *Brabant*. Plaintiff Jason Baase's claim would be barred if he was a prisoner at the time his case was filed; however, the defendants have submitted no evidence that he was in jail on that date. Finally, some of the plaintiffs are similarly situated to the *Rose* plaintiffs and are entitled to summary judgment on liability. Therefore, the Court will grant in part and deny in part the defendants' motion for judgment on the pleadings or for summary judgment, and grant in part and deny in part the plaintiffs' motion for summary judgment.

## I.

The plaintiffs allege in their motion that the facts in this case parallel those in the *Rose* case. However, there appear to be material differences, at least with respect to some of the plaintiffs. Certainly, the same jail facility was involved, but the defendants claim that they changed their policy after December 2001 to require that inmates consigned to administrative segregation be given paper gowns. In the present case, there are sixty-three individuals arrested by various law enforcement agencies throughout Saginaw County from December 1998 to December 2004. Unlike all of the plaintiffs in *Rose*, these plaintiffs were arrested on charges ranging from misdemeanors to serious felonies and probation violations. Many of the arrests were for violent offenses and occurred while the plaintiffs were under the influence of drugs or alcohol. The plaintiffs also include several individuals who allege their rights were violated while they were detained post trial. All the plaintiffs claim to have been placed in segregation either naked or with a paper gown, vest, or blanket.

Both parties have submitted charts indicating whether each plaintiff was given a gown and whether they were pretrial detainees. According to the plaintiffs' chart, 51 of the plaintiffs were pretrial detainees and three had been convicted and were serving a jail sentence. The plaintiffs claim not to know whether nine individuals were pretrial detainees or post-trial con-

victs. According to the defendants, 43 of the plaintiffs were pretrial detainees and five had been convicted. The defendants have been unable to determine the status of five of the plaintiffs: the defendants have no record of four of these individuals being in the jail at the time claimed, and the other person's record has been expunged. Forty-seven of the plaintiffs claim to have been stripped naked, while 16 claim to have been given some covering (such as a paper gown or a blanket). The plaintiffs all claim to have been detained at different times, from 1998 through February 2005.

The defendants state that, unlike the plaintiffs in *Rose*, the jail policy applied to the current plaintiffs required that they be provided paper gowns if they were detained in administrative segregation after December 2001. If any detainee expressed suicidal tendencies, he was put into a protective suicide suit and was not placed in administrative segregation. The defendants also claim that several of the current plaintiffs were never placed in administrative segregation.

It is undisputed that the policy of the Saginaw County Jail is to place in administrative segregation disruptive and disorderly persons, persons who violate the security measures of the jail, and those who pose harm to themselves or others. A detainee remains in administrative segregation until he no longer poses a threat to himself, other detainees, the staff, or the security operations of the jail. The administrative segregation cells are used exclusively to maintain the security of the jail and the safety of officers and detainees. The defendants insist that use of administrative segregation for punishment purposes is strictly prohibited.

It is also undisputed that before December 2001, it was jail practice to require that all clothing be removed from individuals placed in administrative segregation. As noted above, the defendants state that the practice requiring removal of all clothing of individuals placed in administrative segregation was terminated in December 2001. Instead, disruptive individuals required to be placed in administrative segregation were provided paper gowns. The defendants state that individuals were allowed to remain in their undergarments if paper gowns were not available. The plaintiffs dispute this claim and argue that there were instances after December 2001 in which some of them were placed in administrative segregation without their clothes, underwear, or paper gowns.

The timing of certain events in the prior *Rose* litigation is relevant to this case because the present plaintiffs claim that the statute of limitations on their claim was tolled by *Rose*. The *Rose* plaintiffs' initial complaint was filed on October 9, 2001. It named as plaintiffs Linda Rose, Jennifer Cradit, and Jane Doe Detainees of the Saginaw County Jail and sought class certification. All the named *Rose* plaintiffs were pretrial detainees who claimed to have been stripped naked at the jail. The plaintiffs failed to file a motion for class certification before the deadline set in the case management order. However, the complaint was amended multiple times to add additional plaintiffs.

On December 9, 2002, the *Rose* plaintiffs filed their sixth amended complaint, in which they alleged that they were forced to disrobe in the presence of corrections officers even though there was no reason to believe the plaintiffs were dangerous or possessed weapons. The complaint focused on the viewing of the plaintiffs' naked bodies by jail personnel. The complaint alleged constitutional violations, gross negligence, invasion of privacy, assault and battery, intentional infliction of emotional distress, and violation of the Elliott Larson Civil Rights Act. This com-

plaint omitted any reference to class action certification, which was presumed abandoned when the plaintiffs did not move for it within the previously-established deadline of September 13, 2002.

The *Rose* plaintiffs subsequently asked for permission to file a motion for class certification, and on March 4, 2005, the Court filed an order giving them permission. On April 29, 2005, the *Rose* plaintiffs filed a motion for class certification. The Court denied the *Rose* motion for class certification on November 21, 2005 because, among other reasons, the class definition was too broad and would distort the liability holding in the case, which was based on the plaintiffs all being pretrial detainees who were stripped naked and not given gowns. *Rose,* 232 F.R.D. at 272–73 (noting that "[i]t plainly appears that the [*Rose* ] plaintiffs were arguing on behalf of a group of plaintiffs defined as pretrial detainees who were stripped naked").

On January 31, 2005, counsel filed the *Brabant* case but did not request class certification. They filed an amended complaint on February 14, 2005 that included that request. The present case was filed on December 16, 2005.

## II.

■ A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) on the ground that the complaint does not state a cognizable claim is reviewed under the standards that govern motions brought under Rule 12(b)(6). *See* Fed. R. Civ. P 12(c); *Vickers v. Fairfield Med. Ctr.,* 453 F.3d 757, 761 (6th Cir.2006); *Ziegler v. IBP Hog Mkt., Inc.,* 249 F.3d 509, 511–12 (6th Cir.2001). The defendants have moved alternatively for judgment on the pleadings and for summary judgment. Because they have attached and referred to matters outside the pleadings, the Court will treat the motion as one

for summary judgment under Rule 56. *See Kennedy v. R.W.C., Inc.,* 359 F.Supp.2d 636, 640 (E.D.Mich.2005) (recognizing that "[i]f matters outside the pleadings must be considered in ruling on the merits of the claim, as here, the motion more properly should follow the standards and procedures of Rule 56, and reviewing courts generally will treat the motion as one for summary judgment") (citing *Michigan Paytel Joint Venture v. City of Detroit,* 287 F.3d 527, 533 (6th Cir.2002)).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The parties have filed cross motions for summary judgment, which might imply that there are no facts in dispute. Nonetheless, the Court must apply the well-recognized standards when deciding such cross motions; "[t]he fact that the parties have filed cross-motions for summary judgment does not mean, of course, that summary judgment for one side or the other is necessarily appropriate." *Parks v. LaFace Records,* 329 F.3d 437, 444 (6th Cir.2003). Therefore, when this Court considers cross motions for summary judgment, it "must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Westfield Ins. Co. v. Tech Dry, Inc.,* 336 F.3d 503, 506 (6th Cir.2003).

A motion for summary judgment under Fed.R.Civ.P. 56 presumes the absence of a genuine issue of material fact for trial. The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When the "record ·taken as a whole could not lead a rational trier of fact to find for the. nonmoving party," there is no genuine issue of material fact. *Matsushita Elec. Indus. .Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The party who bears the burden of proof must present a jury question as to each element of the claim. *Davis v. McCourt,* 226 F.3d 506, 511 (6th Cir.2000). Failure to prove an essential element of a claim renders all other facts immaterial for summary judgment purposes. *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.,* 936 F.2d 889, 895 (6th Cir.1991). It must be emphasized, however, that "[i]n evaluating the evidence, [the court] 'draw[s] all reasonable inferences therefrom in a light most favorable to the non-moving party.'" *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir.2003).

### A.

■ The plaintiffs' amended complaint alleges violations of the Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendments to the Constitution. The Ninth Amendment claim is without foundation here and will be dismissed. "[T]he ninth amendment does not confer substantive rights in addition to those conferred by other portions of our governing law." *Gibson v. Matthews,* 926 F.2d 532, 537 (6th Cir.1991). The Fifth Amendment claim meets the same fate. "Administrative segregations have repeatedly been held not to involve an 'atypical and significant' hardship implicating a protected liberty interest without regard to duration.... [A] liberty interest determination is to be made based on whether it will affect the overall duration of the inmate's sentence." *Jones v. Baker,* 155 F.3d 810, 812 (6th Cir.1998). None of the plaintiffs have claimed that the segregation increased their sentences.

As for the Fourth and Fourteenth Amendment claims, for those · plaintiffs who area able to prove that they were kept in administrative segregation under the same conditions as those in· *Rose*—that is, pretrial detainees who were required to spend time in the segregation cell with no covering whatsoever—the defendants' motion will be denied, provided that other defenses do not apply. The defendants do not seem to contest this point. However, they argue that many of the present plaintiffs do not fit the *Rose* mold because they were not housed under the same policy, which changed after December 2001; and other circumstances were materially different, namely some of the plaintiffs were convicts, not pretrial detainees, and some were given paper gowns or left in their underwear and were not completely naked.

■ Under Sixth Circuit precedent, the distinction between pretrial detainees and post-conviction inmates serving custody sentences is immaterial for the purposes of the claims in this case. In *Dufrin v. Spreen,* the Sixth Circuit stated that "prison officials need not distinguish between convicted inmates and pretrial detainees in reviewing their security practices. In *Bell v. Wolfish,* 441 U.S. at 546 n. 28, 99 S.Ct. at 1878 n. 28, the Supreme Court expressly noted that neither the Court of Appeals nor the District Court had distinguished between detainees and convicted inmates." *Dufrin v. Spreen,* 712 F.2d 1084, 1087–88 (6th Cir.1983). Therefore, whether the inmates were pretrial detainees or convicts does not alter their status with respect to the alleged violations of their constitutional rights resulting from being confined without clothing.

■ The fact of the presence or absence of paper gowns presents a different question. In *Rose,* the Court examined the naked confinement policy against "the guiding principle ... that 'when a prison

regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.'" *Rose*, 353 F.Supp.2d at 918 (quoting *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)). The Court cited cases that made distinctions between confinement of unruly or potentially suicidal inmates entirely without clothes on one hand and with some minimal cover-up on the other. *Id.* at 919–20. *Compare Wilson v. City of Kalamazoo*, 127 F.Supp.2d 855, 862 (W.D.Mich.2000) (observing that "the Court remains unpersuaded that society is not, as a matter of law, prepared to recognize as legitimate an inmate's subjective expectation that he may not be stripped of all clothing and covering, even for a short period of time, simply because he refuses to answer a question as to whether he is suicidal") *with Johnson v. City of Kalamazoo*, 124 F.Supp.2d 1099 (W.D.Mich.2000) (holding that there was no Fourth or Fourteenth Amendment violation resulting from the practice of placing detainees who refused to answer an inquiry as to whether they were suicidal in a cell clad only in their underwear).

The plaintiffs' privacy interests in not exposing their private body parts remains the same as described in *Rose*, and those principles need not be set forth here again. As the Court explained:

> These well-established interests must be balanced against the defendants' asserted penological interests in evaluating the claims under both the Fourth Amendment and the Fourteenth Amendment's Due Process Clause. To assess a due process violation, the Court must accept the defendants' articulated purpose for the regulation and consider whether the regulation is an exaggerated response to the problem by applying the four factors identified in *Turner*, that is, a valid, rational connection between the regulation and the County's asserted interest

put forward to justify it; whether the plaintiffs had alternative means of exercising their rights—which in this case is the right to privacy; the impact accommodation of their privacy right would have on the allocation of jail resources; and the existence of ready alternatives. *See Wolfish*, 441 U.S. at 547, 99 S.Ct. 1861; *Turner*, 482 U.S. at 89–90, 107 S.Ct. 2254. Under the Fourth Amendment, the Court determines whether the practice is reasonable by considering the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted. *See Wolfish*, 441 U.S. at 559, 99 S.Ct. 1861.

*Rose*, 353 F.Supp.2d 900, 918–21 (E.D.Mich.2005).

In this case, the defendants argue once again that taking the clothes of an inmate consigned to administrative segregation is a necessary security measure because unruly detainees often use their clothing to clog the toilet or sink, causing the cell to flood. When that happens, multiple jail personnel must be diverted to address that problem, making those employees unavailable to secure other areas of the jail. Detainees also could use their clothing to injure themselves, and the paper gowns prevent this. Further, the defendants say that none of the detainees are required to disrobe in front of other inmates, and the policy of the Saginaw Jail prohibits guards of the opposite sex from being present when a detainee disrobes unless the detainee poses such a security risk that additional guards are needed. Therefore, they claim, any viewing by members of the opposite sex is accidental or justified by security concerns and not a constitutional violation.

The Court finds that furnishing some covering changes the balance between the detainees' privacy interests and the jailor's

security needs. The policy of providing paper gowns injects a factor that was absent from the policy condemned in *Rose* and strikes a reasonable compromise between the interests of the plaintiffs and the defendants. The defendants have asserted two interests served by the new policy: first, disruptive detainees often clog sinks and toilets with their clothes; second, disruptive detainees, many of whom are under the influence of alcohol or controlled substances, sometimes try to harm themselves, and their clothing can be used in this effort. "[T]here [is] a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it." *Turner*, 482 U.S. at 89, 107 S.Ct. 2254. Paper gowns serve the County's interest by reducing the threat caused by cloth garments. They satisfy privacy concerns because they cover the inmates' private parts, probably more so than the underwear that was deemed adequate by the court in *Johnson v. City of Kalamazoo*, 124 F.Supp.2d 1099 (W.D.Mich.2000). On the other hand, some of the plaintiffs were furnished with paper vests, which apparently provide no cover for the genitalia. The plaintiffs who had the benefit of a vest only have established a question of fact as to the efficacy of the defendants' practices to achieve a proper balance.

 Some of the plaintiffs claim to have been seen by members of the opposite sex during the time period between the removal of their clothes and their receipt of the gown. In *Kent v. Johnson*, 821 F.2d 1220 (6th Cir.1987), the court found a constitutional violation based on the allegation "that the defendants-appellees' policy and practice of according female prison guards full and unrestricted access to all areas of the housing unit at the prison allows the female guards to view [the male plaintiff— an inmate] performing necessary bodily functions in his cell and to view his naked body in the shower area." *Id.* at 1222.

However, the Sixth Circuit distinguished that case in *Mills v. City of Barbourville*, 389 F.3d 568 (6th Cir.2004), on the basis that "*Kent* involved prison policies that subjected inmates to *routine* searches or viewing by guards of the opposite sex." *Mills*, 389 F.3d at 578–79. The court held that accidental viewing of a naked prisoner by guards of the opposite sex is not a constitutional violation. *Ibid.* The defendants in this case claim no detainees are viewed by members of the opposite sex "unless safety concerns require otherwise." Defs.' Mot. Dism. Ex. I, Gutzwiller Aff. at ¶ 16(h). The plaintiffs have not offered any contrary evidence. Even the *Kent* court recognized that there could be reasons justifying viewing by a member of the opposite sex: "[p]erhaps it is merely an abundance of common experience that leads inexorably to the conclusion that there must be a fundamental constitutional right to be free from forced exposure of one's person to strangers of the opposite sex *when not reasonably necessary for some legitimate, overriding reason*, for the obverse would be repugnant to notions of human decency and personal integrity." *Id.* at 1226 (emphasis added). Since the present policy does not involve the routine viewing of detainees by members of the opposite sex, the policy does not violate the Constitution.

The Court concludes, therefore, that those plaintiffs who claim to have been confined in administrative segregation with paper gowns (not just vests) have not made out a constitutional violation. According to the summary chart submitted by the plaintiffs, those individuals are Richard Bauman, Steven Clark, Mary Franz, L.C. Harris, Jr., Corneathia Harvey, Michael Jewell, Viella Johnson, Wardell Laury, Brenda Pichotte, Brett Podaba (given a blanket), Lee Reardon (given a padded green suicide jacket), Maurice Thompson, Dantae Tyson, and James Wil-

lis. Summary judgment will be granted to the defendants on the claims of these plaintiffs.

The defendants contend that the remaining plaintiffs who were confined after December 2001 were not kept naked pursuant to a policy. However, the number of plaintiffs who assert that they were subject to naked detention in administrative segregation raises a question of fact whether the defendants nonetheless maintained the custom of naked confinement in administrative segregation consistent with the former policy, even if the formal policy changed. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 482 n. 10, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (observing that a municipality " 'may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels' ") (quoting *Monell v. Dept. of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir.1994).

### B.

■ The defendants also claim that many of the plaintiffs in this case have filed their clams out of time. The statute of limitations for claims arising under 42 U.S.C. § 1983 brought in the federal courts in Michigan is three years. *McCune v. City of Grand Rapids*, 842 F.2d 903, 905–06 (6th Cir.1988). This case was filed on December 16, 2005. Therefore, the defendants argue, those plaintiffs whose confinement in the Saginaw County Jail occurred before December 16, 2002 would be time-barred from asserting their claims. That argument reaches the claims of thirty of the present plaintiffs.

■ The plaintiffs argue that they should receive the benefit of the tolling rules for class actions recognized by *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), and *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983). Because the *Rose* litigation was commenced as a putative class action, as was the *Brabant* case, the plaintiffs believe that the statute of limitations was tolled when those cases were filed and did not commence again until there was a definitive ruling denying class certification, which occurred in *Rose* on November 21, 2005 and has not occurred yet in *Brabant*. An amended complaint seeking class status was filed in *Brabant* on February 14, 2005.

"The Supreme Court has held that 'the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action.' *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974) (footnote omitted). The Court later clarified that tolling applied not only to intervenors, but also to putative class members who file actions of their own. *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 349, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983)." *Wyser–Pratte Mgmt. Co., Inc. v. Telxon Corp.*, 413 F.3d 553, 566–67 (6th Cir.2005). The purposes of the statute of limitations—"to put defendants on notice of adverse claims and to prevent plaintiffs from sleeping on their rights," *Crown, Cork & Seal*, 462 U.S. at 352, 103 S.Ct. 2392—is served by this rule, in the Supreme Court's view, since putative class members are encouraged by the rules of procedure to press their claims through their class representatives, and the class action defendant is on notice of the nature and extent of the potential claims against it.

All of this presupposes that those who do not file their own claims are actually putative class members, and that the claims they do file eventually fall within the putative class claims. "The tolling rule of *American Pipe* ... should not be read ... as leaving a plaintiff free to raise different or peripheral claims following denial of class status." *Crown, Cork & Seal Co.*, 462 U.S. at 354, 103 S.Ct. 2392 (Powell, J. concurring); *see also Weston v. AmeriBank*, 265 F.3d 366, 368 (6th Cir.2001) (holding that "[u]nder *American Pipe*, the statute of limitations for putative class members of the original class is tolled only for substantive claims that were raised, or could have been raised, in the initial complaint").

The *Rose* litigation serves to toll the statute of limitations for all the *Abner* plaintiffs who are members of the putative *Rose* class, namely, all those pretrial detainees who were confined in administrative segregation without any covering. The present plaintiffs who were given paper gowns are not part of the *Rose* putative class. This Court previously rejected the plaintiffs' attempt to broaden the *Rose* class:

> The plaintiffs state in their reply brief that they "have not limited their claim to pretrial detainees." Pl.'s Reply at 4. However, all the named plaintiffs in the several amended complaints were pretrial detainees. In their motion for summary judgment, which resulted in a ruling that the policy was unconstitutional as applied to pretrial detainees, the plaintiffs stated, "Plaintiffs are pretrial detainees accused of misdemeanors, not felonies." Pl.'s Mot. Summ. J. at 9. The plaintiffs describe the policy as one that requires officers "to strip naked pretrial detainees for insubordination." *Id.* at 1. The argument section of their brief stated that the officers must have probable cause for "any significant pretrial restraint of liberty." *Id.* at 10. The brief

contains an entire section about the punishment of people not convicted of any crime. *Id.* at 15–17. It plainly appears that the plaintiffs were arguing on behalf of a group of plaintiffs defined as pretrial detainees who were stripped naked.

*Rose v. Saginaw County*, 232 F.R.D. 267, 272–73 (E.D.Mich.2005). *Abner* plaintiffs who do not meet this definition are not entitled to tolling.

The plaintiffs attempt again to broaden the scope of those entitled to tolling by arguing that the defendants had a basic notice of the potential claims and the "essential information necessary to determine both the subject matter and size of the prospective litigation." *American Pipe*, 414 U.S. at 554, 94 S.Ct. 756. However, the defendants did not have that information because the *Rose* pleadings indicated that the class included only pretrial detainees who were stripped completely and not given gowns. Adding post-conviction detainees and detainees who were given gowns drastically increases "both the subject matter and size of the prospective litigation" to include every person put in segregation after the policy changed in December 2001.

The plaintiffs also claim that the defendants must demonstrate prejudice to defeat tolling. No case supports that argument in those words, but it is clear that tolling will not occur where the first case failed to give the defendant notice of the claims in the second case. "The first principle of significance to this case is that the class action must afford the defendant with adequate notice." *Wyser–Pratte Management Co.*, 413 F.3d at 567. As explained above, however, the differences between detainees given gowns and not given gowns is significant, and the *Rose* litigation failed to notify the defendants of the claims of those who were given gowns.

▮ The remaining question is when the tolling starts and ends. The plaintiffs cite *Glidden v. Chromalloy Am. Corp.*, 808 F.2d 621, 627 (7th Cir.1986), for the proposition that tolling does not end until there is a formal determination that the class will not be certified; abandonment of class claims will not suffice. However, the Court believes that the better rule was stated in *Lee v. Dell Products, L.P.*, 236 F.R.D. 358 (M.D.Tenn.2006). In that case, the plaintiffs sought to avail themselves of the tolling rule based on a previous class action in which the plaintiffs failed to move for class certification within the time provided by local rule. Therefore, there was no formal ruling in the previous case denying class certification. The court held:

> Clearly, the absence of a ruling on class certification cannot mean that tolling continues indefinitely. Although there is no Sixth Circuit case law addressing this question, the Court finds under the circumstances presented here that the passage of the date for filing a motion to certify the action as a class action without the plaintiffs' actually filing any such motion terminated the action as a class action from that day forward. Consequently, the statute of limitations on the claims of the Plaintiffs in this case began to run again as of that date.

*Lee*, 236 F.R.D. at 362.

In this case, the initial *Rose* complaint was filed with class claims on October 9, 2001. The Court set a deadline of September 13, 2002 in its scheduling order for filing a motion to certify a class, but none was filed. Later, on March 4, 2005 the Court granted the plaintiffs leave to seek class certification by motion filed before April 29, 2005. This time, a motion was filed timely, and the Court denied it on November 21, 2005. The statute of limitations, therefore, was tolled for 601 days, that is from October 9, 2001 to September 13, 2002 and from March 4, 2005 to November 21, 2005.

The plaintiffs also state that the *Brabant* litigation further tolled the statute of limitations from the filing of the amended complaint in which class claims were first asserted on February 14, 2005, and they cite in support *Yang v. Odom*, 392 F.3d 97, 99 (3d Cir.2004) (holding "that *American Pipe* tolling applies to the filing of a new class action where certification was denied in the prior suit based on the lead plaintiffs' deficiencies as class representatives, but that *American Pipe* tolling does not apply where certification was denied based on deficiencies in the purported class itself"). The Sixth Circuit has rejected the view that serial class actions can perpetuate themselves under the *American Pipe* rule. "[T]he pendency of a previously filed class action does not toll the limitations period for additional class actions by putative members of the original asserted class." *Andrews v. Orr*, 851 F.2d 146, 149 (6th Cir.1988). The *Andrews* court in turn relied on *Salazar–Calderon v. Presidio Valley Farmers Ass'n*, 765 F.2d 1334, 1351 (5th Cir.1985). In that case, the court of appeals held that the plaintiffs were entitled to tolling from one prior class action case, but not two prior class action cases. "Plaintiffs have no authority for their contention that putative class members may piggyback one class action onto another and thus toll the statute of limitations indefinitely." *Salazar–Calderon*, 765 F.2d at 1351, cited in *Andrews*, 851 F.2d at 149.

Since the present case is not itself a class action, both *Andrews* and *Yang* can be distinguished. However, *Andrews* does require a holding that the *Brabant* class is not entitled to any tolling from *Rose*, and it would be incongruous to find that the *Abner* class would be entitled to tolling from both *Rose* and *Brabant* if the *Brabant* class members are not afforded tolling from the *Rose* litigation. Moreover, *Salazar–Calderon*, cited favorably by the Sixth Circuit, involved the very situation in

the present case, and the court prohibited putative class members from using the time tolled by the second class action to extend their filing deadline.

Based on the plaintiffs' submission as to the dates of confinement at the Saginaw County Jail, and calculating 601 days of tolling, the following individuals' claims are time-barred: James Abner (tolled by *Rose* but still late), Jerry Boose (tolled by *Rose* but still late), Carl Delaney (tolled by *Rose* but still late), Judith Glesmer (not enough information to determine if tolled by *Rose* but still late), Raymond Gotham (tolled by *Rose* but still late), Corneathia Harvey (not tolled by *Rose* ), (tolled by *Rose* but still late), Christine Itter (tolled by *Rose* but still late), Brad Johnson (tolled by *Rose* but still late), Dennis Jolin (tolled by *Rose* but still late), Brad Kuznicki (tolled by *Rose* but still late), Wardell Laury (not tolled by *Rose* ), Donta Lee (not enough information to determine if tolled by *Rose* but still late), Michael Nothelfer (tolled by *Rose* but still late), Benny Parker (tolled by *Rose* but still late), Barbara Perkins (tolled by *Rose* but still late), Scott Perreault (tolled by *Rose* but still late), Lee Reardon (not tolled by *Rose* ), and James Stewart (not enough information to determine if tolled by *Rose* but still late). The defendants have not furnished sufficient information to determine whether the claims of the following individuals are time-barred: James Hahn, Richard Pool, Daniel Roland, and Warren Strong. The claims of the rest of the plaintiffs are not barred by the statute of limitations.

### C.

The defendants state plaintiff Jason Baase was incarcerated at the jail at the time the complaint was filed on December 16, 2005, and therefore he is subject to the Prison Litigation Reform Act (PRLA), which requires prisoners to exhaust available administrative remedies prior to bringing suit. 42 U.S.C. § 1997e(a); *Porter v. Nussle,* 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). The PLRA states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). The Supreme Court has held that this statute requires that prisoners "exhaust all 'available' remedies, not just those that meet federal standards," and they must do so by "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo,* —— U.S. ——, 126 S.Ct. 2378, 2382, 2386, 165 L.Ed.2d 368 (2006). However, the Supreme Court also has held that the exhaustion requirement is an affirmative defense under the PLRA that must be pleaded and proved by the defendant. *Jones v. Bock,* —— U.S. ——, 127 S.Ct. 910, 919–21, 166 L.Ed.2d 798 (2007).

In this case, the defendants have not submitted any proof that Baase was incarcerated at that time the complaint was filed. Instead, they cite a chart that they compiled of all the plaintiffs' claims. But that chart states only that Mr. Baase was arrested for probation violation on December 29, 2004. It does not state that he was in jail on December 16, 2005. In addition, Mr. Baase claims to have been put in segregation on December 19, 2004, which is before the defendants believe he was arrested. There is no clear evidence that this plaintiff was subject to the requirements of the PLRA, and the defendants are not entitled to summary judgment on that ground.

### D.

▮ The individual defendants claim that they are entitled to qualified immunity. This Court has found that the individ-

ual defendants in *Rose* were entitled to qualified immunity, and these same individual defendants contend that they are similarly situated. The plaintiffs argue that the defendants are not entitled to qualified immunity because the right at issue was clearly established once the jail issued its directive prohibiting naked detentions in December 2001. After that point, they say that the "hazy border" referred to in the *Rose* opinion no longer existed. Rather, they believe that once the directive was issued, officers should have been aware that detainees have some privacy rights protected by the Constitution.

Qualified immunity is an affirmative defense that protects police from liability for civil damages when their conduct does "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The Supreme Court has held that a claim of qualified immunity must be examined in two stages, *see Saucier v. Katz*, 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), although the Sixth Circuit sometimes expands the inquiry into a three-step sequential analysis, stating: "The first inquiry is whether the [p]laintiff has shown a violation of a constitutionally protected right; the second inquiry is whether that right was clearly established at the time such that a reasonable official would have understood that his behavior violated that right; and the third inquiry is 'whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established rights.'" *Tucker v. City of Richmond, Ky.*, 388 F.3d 216, 219 (6th Cir.2004) (quoting *Higgason v. Stephens*, 288 F.3d 868, 876 (6th Cir. 2002)); *see also Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 901 (6th Cir.2004) (citing *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir.2003)). That court later explained that although the Supreme Court continues to use the two-step approach, *see Brosseau v. Haugen*, 543 U.S. 194, 197, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (per curiam), "'the three-step approach may in some cases increase the clarity of the proper analysis.'" *Swiecicki v. Delgado*, 463 F.3d 489, 498 (6th Cir. 2006) (quoting *Estate of Carter v. City of Detroit*, 408 F.3d 305, 311 n. 2 (6th Cir. 2005)). It appears that when the state actor's conduct is obviously "objectively unreasonable" and violates a constitutional right, the court will "collapse" the last two steps. *Ibid.* (quoting *Caudill v. Hollan*, 431 F.3d 900, 911 n. 10 (6th Cir.2005)). Where a more exacting analysis of the facts may be necessary, the court tends to employ the third step, since "[i]t is important to emphasize that [the step-two] inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau*, 543 U.S. at 198, 125 S.Ct. 596 (internal quotes and citation omitted). Once the defense is raised, the plaintiff has the burden of demonstrating a violation of a constitutional right and showing that the right was clearly established. *Barrett v. Steubenville City Sch.*, 388 F.3d 967, 970 (6th Cir.2004).

In this case, the Court has held that the plaintiffs who claim that they were detained in administrative segregation and given paper gowns have not stated a violation of a constitutional right. Those who were detained without any covering or with only a vest have made out a constitutional claim in the same fashion as the *Rose* plaintiffs. However, at the time of their detentions, the constitutional right was not clearly established for the same reasons as stated in *Rose*, because all of these incidents occurred prior to the Court's decision in *Rose* on January 25, 2005. The plaintiffs' chart summarizing

their claims shows that only one person is claiming to have been required to strip off all clothing after that date. Dantae Tyson was allegedly put in the segregation cell in February 2005. But Mr. Tyson admits he was given a paper gown. Because "the contours of the right" were not clear prior to the *Rose* decision, *Rose v. Saginaw County*, 353 F.Supp.2d 900, 924 (E.D.Mich. 2005), the individual defendants are entitled to qualified immunity as to all claims of pretrial detainees stripped completely naked prior to January 25, 2005.

### E.

The plaintiffs also move for summary judgment. However, there are fact questions that remain with respect to whether the plaintiffs who claim they were not given paper gowns in fact were not; the defendants claim that they were given some sort of covering in accordance with a new policy since December 2001. There are also fact questions as to whether those who in fact were housed naked were treated under an established municipal custom. There are some plaintiffs, however, who find themselves in the same posture as the *Rose* plaintiffs, that is, they were detained prior to December 2001, under the naked detention policy, and their claims are not time-barred. Those individuals are entitled to summary judgment on the question of liability. They are: Francisco Castillo, Kris Doud, Jonathan Flora, and Antrovel Smith.

### III.

The Court finds that the plaintiffs who were detained and given paper gowns or other adequate covering have not stated a constitutional violation, some of the plaintiffs' claims are time-barred, some of the plaintiffs are entitled to summary judgment on the issue of liability, the defendant is not entitled to summary judgment on the basis of the Prison Litigation Reform Act, and the individual defendants are entitled to qualified immunity.

Accordingly, it is **ORDERED** that the defendants' motion for judgment on the pleadings or for summary judgment [dkt # 8] is **GRANTED IN PART AND DENIED IN PART.**

It is further **ORDERED** that the plaintiffs' motion for summary judgment [dkt # 7] is **GRANTED IN PART AND DENIED IN PART.**

It is further **ORDERED** that the matter is **DISMISSED WITH PREJUDICE** as to defendants Charles Brown, Arnold J. Burns, Lt. William Gutzwiller, and Officers John Doe and Jane Doe.

It is further **ORDERED** that the matter is **DISMISSED WITH PREJUDICE** as to plaintiffs James Abner, Richard Bauman, Jerry Boose, Steven Clark, Carl Delaney, Mary Franz, Judith Glesmer, L.C. Harris, Jr., Corneathia Harvey, Christine Itter, Michael Jewell, Brad Johnson, Viella Johnson, Dennis Jolin, Brad Kuznicki, Wardell Laury, Donta Lee, Michael Nothelfer, Benny Parker, Barbara Perkins, Scott Perreault Brenda Pichotte, Brett Podaba, Lee Reardon, James Stewart, Maurice Thompson, Dantae Tyson, and James Willis.

It is further **ORDERED** that the following plaintiffs are entitled to judgment as a matter of law on the issue of liability: Francisco Catstillo, Kris Doud, Jonathan Flora, and Antrovel Smith.

It is further **ORDERED** that counsel shall appear for a status conference at the Court's chambers on **August 31, 2007 at 3:00 p.m.** to discuss further case management.